THE COUNTY OF COOK

v.

DANIEL J. WREN, FOR USE, ETC.

*Municipal Corporations—Officers—County Commissioners—Salary of—Sec. 10, Art. 10, Constitution—Sec. 39, Chap. 34, R. S.—Set-off.*

1. A person taking the office of county commissioner is bound to know the location of the institutions under the control of the county board, and that the management of them will involve personal inspection thereof by it. Where the compensation of such officers is fixed by law at so much each per day, such sum covers all duties, whether their performance involves personal expense in traveling or not.

2. In such case a commissioner can recover for his services only the sum resulting from multiplying the number of days of service by such sum.

3. Where the estimate for the annual appropriation contains an amount for "miscellaneous expenses," such expenses must be looked upon to mean expenses of the county, not personal expenses of the commissioners.

4. If conveyances become necessary for the transportation of the county board, or its committees, in the discharge of board functions, they constitute board or county expenses, and are not incurred by individual commissioners, nor are they to be paid to them.

5. One who deals with agents of a municipal corporation is bound to know their authority, and if he receives from them money which they have no legal authority to pay, it may be recovered in an action by the municipality.

6. A county may recover any excess of compensation paid a county commissioner over and above what was legally due him, and the same is a proper matter of set-off in an action brought to recover on a warrant issued to such person in payment of his *per diem* as commissioner.

[Opinion filed December 7, 1891.]

APPEAL from the Superior Court of Cook County; the Hon. JOHN P. ALTGELD, Judge, presiding.

Messrs. FRANCIS W. WALKER and EDWARD J. JUDD, for appellant.

Sec. 10 of Art. 10 of the Constitution of 1870, provides that " The county board, except as provided in Sec. 9, shall fix the compensation of all county officers  *  *  *  provided that the compensation of no officer shall be increased or diminished during his term of office."

County Commissioners of Cook County are included in the term " county officers " used in the foregoing section of the constitution.    Wulff v. Aldrich, 124 Ill. 591.

Sec. 39, Chap. 34, title " Counties," provides, that " The time of fixing the compensation of county officers whose compensation is to be fixed by the county board, shall be at the meeting of such board, next before the regular election of the officers whose compensation is to be fixed."    The county board, in accordance with this statute, fixed the compensation of Wren before his term began, and any subsequent action of the county board in passing and allowing a greater sum than fixed by law, is *ultra vires*, and void.    Cumberland County v. Edwards, 76 Ill. 544.

It was a physical impossibility for Wren to have earned the amount allowed him during the period for which it was allowed. If such allowance was thoughtless, it was a " mistake;" if it was intentional, it was a " fraud."    In either case, it renders the allowance not binding on the county.    Albright v. County of Bedford, 106 Pa. St. 582.

Money paid by mistake, or obtained by fraud, or, in case of a municipal corporation, if paid *ultra vires*, can be recovered back under the common count for money had and received for the use of the plaintiff.    Demarest v. Township of New Barbadoes, 40 N. J. 604; Board Com. Marshall Co. v. Johnson, 26 N. E. Rep. 821.

By the judge's refusal to allow the counsel of defendant to address the jury, defendant has been deprived of the right of trial by jury guaranteed it by both the United States Constitution and the Constitution of this State.

By the court's directing a verdict, the defendant has likewise been deprived of its rights to a trial by jury.

Messrs. HANECY & MERRICK, for appellee.

The law is well settled that where money has been voluntarily paid with full knowledge of all the facts and circumstances under which it was demanded, it can not be recovered back upon the ground that the party paying it labored under a misapprehension of his legal rights and obligations. 4 Wait's Actions & Defenses, 486, and cases there cited.

The plea of set-off admits the plaintiff's claim.

" Set-off has been well defined as a mode of defense by which the defendant acknowledges the justice of the plaintiff's demand, but sets up a demand of his own against the plaintiff to counterbalance it in whole or in part." Parsons on Contracts, Book 2, Sec. 10, page 873.

" The plea of set-off is an acknowledgment of the justice of the plaintiff's demand, and failing in the proof the judgment must be for the plaintiff's demand. 3 Blackstone's Com. 304 (Cooley's Ed.)." Raymond v. Kerker, 81 Ill. 381, 382.

"Under the count upon an account stated the original form or evidence of the debt is of no importance, for the stating of the account alters the nature of the debt, and is in the nature of a new promise or undertaking." Greenleaf on Evidence, 115; Throop v. Sherwood, 9 Ill. 92.

" An adjustment and settlement of accounts between parties affords evidence that all items properly chargeable at the time were included: This is not conclusive, but it would require clear and convincing proof that such items were unintentionally omitted by the party subsequently claiming to recover them." Bull v. Harris, 31 Ill. 487.

The above doctrine is approved in Strauber v. Mohler, 80 Ill. 21; Hodge v. Boynton, 16 Ill. App. 524.

The only evidence on the set-off was the testimony of Wren, and he repeatedly states the allowances were for *per diem*, mileage and expenses. This proves that defendant is not entitled to any set-off.

" Where a plaintiff receives, at the end of each month, a statement from the defendant of his account, and at the close of the dealings accepts a check of defendant as the payment

County of Cook v. Wren.

of the balance of the account, making at no time complaint of the accounts, or intimating any mistakes or incorrectness in the several statements, the acceptance of the check must be taken as an adjustment of the account between the parties." Pynchon v. Day, 118 Ill. 9.

"Where a master has credited his servant for full time and settled on that basis, in an action on a note given to such servant he can not claim a set-off on the ground of time lost by the servant by reason of sickness." Prussing Vinegar Company v. Meyer, 26 Ill. App. 564.

There is no testimony in the entire record showing or tending to show the slightest fraud, circumvention, wrong dealing, mistake, or misapprehension at the time of the settlements between the parties.

"It is proper for the court to direct a verdict when it would be its duty to set aside a different one if rendered. An instruction may be given to return a verdict where there is no evidence having a tendency to prove the issue even under the 'rule of scintilla of evidence.'" Thompson's Charging the Jury, 44; 11 Am. & Eng. Encyclopedia of Law, 243, and cases there cited.

"If there is no evidence before the jury on a material issue, in favor of the party holding the affirmative of that issue, on which the jury can, in the eye of the law, reasonably find in his favor, the court may exclude the evidence or direct the jury to find against the party so holding the affirmative." Frazer v. Howe, 106 Ill. 563.

The above case is quoted with approval in Simmons v. Chicago & Tomah R. R. Co., 110 Ill., on page 346 of the opinion, and in Commercial Insurance Co. v. Scammon, 123 Ill. 601.

In the latter case Mr. Justice Scholfield says: "The question of fact, when there is in the evidence a real controversy of fact, must be tried by the jury, but it is for the court to say whether evidence offered is pertinent to the issue, and also whether there is sufficient evidence before the jury to present an issue of fact under the pleadings, and if there shall not be, to direct what verdict shall be returned."

" This court will not reverse a judgment for an instruction to find for the plaintiff, when under the evidence the verdict could not have been different from what it was." Caveny v. Weiller, 90 Ill. 158; Crowley v. Crowley, 80 Ill. 469; Hazen v. Pierson, 83 Ill. 241.

Replying to the contention of appellant that it was denied the right of trial by jury, it is only necessary to say that the Constitution of the United States and of this State only guarantee a trial by jury to litigants upon controverted questions of fact in civil cases.

" The maxim is, " *Ad quœstionem facti non respondent judices—ad quœstionem legis non respondent juratores.*" Ross v. Irving, 14 Ill. 171; Mascall v. Commissioners of Drainage Districts, 122 Ill. 620; Commercial Ins. Co. v. Scammon, 123 Ill. 601.

MORAN, J. An action was brought against the county of Cook in the name of Wren for the use of Henry E. Lowe, to recover on a warrant or county order issued to said Wren in payment of his *per diem* as county commissioner, for the quarter ending August 31, 1886. There was no contention on the part of the county that said warrant was not a valid claim for the compensation earned for the quarter for which it was issued, but an offset was interposed which was composed of alleged over-payment made to said Wren on orders on which he received the money prior in date to the one in suit. To prove this claimed set-off counsel for appellant offered five county warrants showing the payment to said Wren for five quarters, the first ending February 28, 1885, and the last ending February 28, 1889, of the aggregate sum of $2,287. Appellant also introduced the records of the county board showing that on August 25, 1884, said board fixed the salaries of county officers for the years 1884 and 1885, among others, fifteen county commissioners, each at $5 per day for actual service; and that on August 17, 1885, said board fixed the pay of the county commissioners for the year from September 1, 1885, to August 31, 1886, at $5 per day for actual service. Appellant then offered to show by the almanac that during

County of Cook v. Wren.

the said five quarters, after deducting Sundays and legal holidays, there remained but three hundred and sixty days, and that said Wren's *per diem* could amount to no more than $1,800, and that the excess of $487 paid him as *per diem* during said period, the county was entitled to recover back and it was therefore a good set-off against the claim in suit. The court disregarded the said claim of set-off and directed the entry of a verdict against appellant for the amount of the warrant sued on, to wit, $481.75, for which judgment was rendered. The principal question presented is, could said Wren retain money paid to him by the county as compensation for his services as commissioner, in excess of what he could possibly have earned, under the terms by which his compensation is fixed?

Sec. 10 of Art. 10 of the State Constitution requires that the county board shall fix the compensation of all county officers, and directs that the compensation of no officer shall be increased or diminished during his term of office. The compensation is to be determined at the meeting of the board next before the regular election of the officers whose compensation is to be fixed. Sec. 39, Chap. 34, R. S.

The records of the board introduced in evidence show that for the period covered by the warrants, the compensation of Wren was fixed at $5 per day for actual service. Could he legally draw anything from the county over and above such fixed compensation for the performance of his duties as a county commissioner, even though in the performance of such duties personal expense was incurred, as for traveling expenses in visiting county institutions?

Dillon in his work on Municipal Corporations, Sec. 233, says : " It is a well settled rule that a person accepting a public office, with a fixed salary, is bound to perform the duties of the office for the salary. He can not legally claim additional compensation for the discharge of these duties even though the salary may be very inadequate remuneration for the services. The rule is important to the public. To allow changes and additions in the duties properly belonging, or which may properly be attached to an office to lay the foundation for

extra compensation, would introduce intolerable mischief. The rule, too, should be rigidly enforced. The statutes of the legislature, and the ordinances of our municipal corporations, seldom prescribe with much detail and particularity the duties annexed to public offices; and it requires but little ingenuity to run nice distinctions between what duties may, and what may not, be considered strictly official; and if these distinctions are much favored by courts of justice, it may lead to great abuse."

The law imposes on the county board the duty of erecting, maintaining and managing various county institutions, such as the poorhouse, insane asylum, etc., and one who takes the office of county commissioner is bound to know the location of these institutions, and that the management of them by the board of which he is a member will involve personal inspection of them by the commissioners, for the purpose of information, to the end that the action of the board may be intelligent and discreet. So far as the proper discharge of official duty in the management of county affairs and county institutions may require the commissioner to travel from one part of the county to another, or from his residence in one part of the county to a meeting of the board or a committee thereof in another part of the county, such acts, whatever the personal expense they entail, must be discharged without other recompense than is fixed by law for the performance of the duties of the office. He who takes the office takes it *cum onere*. He knows that the duties of it will require him to travel to different parts of the county and he agrees to assume those duties for a compensation of $5 per day. In such case the number of days of actual service multiplied by five must show the amount of salary that he is legally entitled to receive for a given period of the term of office. This is so, for the reason that the county board in fixing the salary of county commissioners each year, determined that it should be so. Doubtless the board had the power to fix the salary at *per diem* for each day's service and such mileage or other expenses as the commissioner necessarily expended in the discharge of his duties, but the board did not do so, as appears by

the record.   It fixed the salary of each commissioner "at $5 per day for actual service." The compensation being thus fixed in such terms by the board, is the same in effect as if the legislature had itself fixed it by statute, for the board only exercises a power conferred upon it by the legislature.  If it had been so fixed by statute it would be impossible to contend that mileage could be claimed in addition to the *per diem* named by the law as compensation for the personal discharge of the duties of the office.   This exact point was decided by the Supreme Court of Pennsylvania in Albright v. The County of Bedford, 106 Pa. St. 582.   There the statute provided that "the county commissioners of Bedford County shall receive out of the county treasury the sum of $2 for each and every day necessarily employed by them, or either of them, in attending to the duties of their offices."

The contention by the commissioners was that they were entitled to demand from the county, expenses incurred by them in traveling around the county, in holding appeals in several townships and in visiting and examining county bridges. The claim included railroad fare, hire of conveyances, etc.   The court in denying the claim said: "The unmistakable purpose" (of the law) "is to fix the entire compensation which the commissioners can draw from the county treasury.  Not only shall they be paid by the day, but for the whole time they are necessarily employed in attending to the duties of their offices, they shall thus be paid.   There is no provision for any other or different pay; no allowance for mileage, traveling expenses or boarding bills is prescribed.   They derive their powers and authority as well as their compensation from the law.   They can no more enlarge the one than the other.   * * *   These are matters for which the law does not provide and for which the county is not liable.   When a positive law clearly prescribes the manner and nature of the compensation to be paid to a public officer, the directions of that law should be the only rule and measure of the officers' claim on the public moneys."

It appears from the records of the county board that in the estimate for the annual appropriation reported to the county board by the committee on finances, the *per diem* of commis-

sioners was placed at \$25,000 and "miscellaneous expenses \$25,000." No light is thrown on the question by the proof that such items were in the appropriation bill. Miscellaneous expenses must mean expenses of the county, not personal expenses of the commissioners.

Counsel for appellee argues that *per diem* is one thing and allowances for expenses another; and that the latter are to be determined by the county board from time to time as they might arise. It is true the necessary expenses for fuel, clerk hire, stationery, etc, for running any of the county offices or the business of the county board, are under the control of the board and may be provided for from time to time, but it can not be contended that such expenses are to be allowed to individual commissioners. No such expenses attend the performance of their personal official duties. It is said that appellee testified that part of the warrants in question were made up of allowances for mileage, and that the fact that the warrant was drawn for *per diem* would not prevent proof that it contained an allowance for mileage. It may be if the compensation was fixed by the board at a *per diem* and mileage, that it might be shown that a warrant calling for *per diem* also included mileage. But the difficulty is that there is no competent evidence that the county ever allowed any mileage. For the warrant to contain such an allowance in fact is one thing and for it to legally include such an allowance is quite another.

As is before said the *per diem* was the compensation fixed for the performance of the duties of the office by the commissioner. That covered all duties whether their performance involved personal expense in traveling or not. That compensation could not be increased during the term of office, directly by a larger *per diem* or indirectly by the allowance of mileage or other personal expenses. If conveyances become necessary for the transportation of the county board or its committees in the discharge of board functions, they con-. stitute board or county expenses, and are not incurred by individual commissioners, nor are they to be paid to them.

It must be concluded, therefore, that the warrants which

were paid to said Wren exceeded the amount which the proof shows could be lawfully earned by him, and this is true even if *per diem* was to be allowed for every Sunday and legal holiday that occurred during the period covered by the warrants.

Could the excess of what could be earned be recovered back after having been paid, in an action by the county? On this question it is contended by appellee that the money was paid with full knowledge of all the facts and circumstances, and it can not therefore be recovered back. That would undoubtedly be the rule between natural persons in a case in which no fraud was perpetrated, and it may be that for any amount within the limit of what could possibly be legally earned, the settlement and payment of an account between a public corporation and an individual would be held *prima facie* binding and to be opened only on proof of fraud or mistake. But that rule could operate as against a municipal corporation, only where the money paid was within the limit of the amount authorized to be paid by law in any event, and could not be extended to cases where the amount sought to be recovered back was paid in excess of the amount which could in any event be legally found due.

An officer whose salary was fixed by a *per diem* for actual service, could not retain against the municipality, the amount of the *per diem* for four hundred days' service in any one year, on the plea that it had been paid to him by an agent of the corporation upon knowledge of all the facts.

No agent would have authority to bind the county by such a payment, or to estop it to recover back money so paid without authority of law. One who deals with agents of a municipal corporation is bound to know their authority, and if he receives from them money which they have no legal authority to pay, it may be recovered back in an action by the municipality. Demarest v. Inhabitants of New Barbadoes, 40 N. J. L. 604; Board of Commissioners of Marshall County v. Johnson, 26 N. E. Rep. 821.

In Ellis v. Ward, 20 N. E. Rep. 671, it is held by our Supreme Court that a fund of a private corporation paid by

the directors to its president as salary when there was no by-
law authorizing payment for such services could be recovered
back by the corporation or its receiver.

We hold, therefore, that the county could recover back any
excess of compensation over and above what could legally be
due to appellee which the evidence showed had been paid
to appellee, and that the same was a proper matter of set-off
against the claim on the warrant on which suit was brought.
It follows that the court erred in disregarding the claim for
the excess of payment and directing the jury to find a verdict
for the plaintiff for the amount claimed by him.

There were certain irregularities as to the entering of the
verdict in this case. In fact, as the bill of exceptions shows
no verdict was ever rendered by the jury, the error in that
regard need not be discussed, as it is very unlikely that it will
occur again.

*Judgment reversed and case remanded.*