[Civil No. 3274. Filed November 23, 1932.]

[16 Pac. (2d) 12.]

A. G. AUSTIN and HARTFORD ACCIDENT AND INDEMNITY COMPANY, a Corporation, and HUGH C. GILBERT and PACIFIC INDEMNITY COMPANY, a Corporation, Appellants, v. SAM BARRETT, Appellee.

Messrs. Baker & Whitney and Mr. Lawrence L. Howe, for Appellants.

Messrs. Flanigan & Fields, for Appellee.

LOCKWOOD, J.—Sam Barrett, hereinafter called plaintiff, brought two separate suits under sections 790 and 791, Revised Code 1928, the one against Hugh C. Gilbert, then and for some time previously a member of the board of supervisors of Maricopa county, and his official bondsman, Pacific Indemnity Company, a corporation, and the other against A. G. Austin, also a member of such board of supervisors, and his official bondsman, Hartford Accident & Indemnity Company, a corporation. By stipulation of the parties, since the legal issues involved were identical, the cases were consolidated and tried together. Judgment was rendered in favor of plaintiff against defendant Gilbert and his bondsman in the sum of $484.40, and against Austin and his bondsman in the sum of $800.40, together with the statutory interest, penalty, attorney's fees, and costs, and from said judgments this appeal has been taken.

The essential facts of the case are in no manner in dispute, and may be stated as follows: Gilbert and Austin were and are members of the board of supervisors of Maricopa county, the former residing near Glendale, in supervisorial district No. 2, and the latter in Chandler, which is in supervisorial district No. 1. The distance from Gilbert's residence to the office of the board of supervisors in Phoenix is 14 miles, and from Austin's residence to such office is 23 miles. During their incumbency of their offices, and before the beginning of this action, each of them had presented to the board of supervisors demands against Maricopa county for a large sum of money on the theory that they were entitled to mileage while traveling from their respective residences to the office of the board of supervisors in Phoenix for the purpose of attending official meetings of such

board. The total amount allowed and paid to Austin on such claims was $2,800.80, and to Gilbert $1,805, and the suits involved herein were brought by plaintiff to recover the amounts so paid, on the ground that they were not legal charges against the county.

Defendants demurred to the greater portion of said claims for refund on the ground that they were barred by the statute of limitations, which demurrers were by the trial court sustained, except as to the amounts of $484.40 and $800.40, respectively, and the case was determined as to such last-named amounts on the question of whether as a matter of law supervisors are entitled to be paid mileage for the distance necessarily traveled by them to and from their residences to the place where the board of supervisors is required by law to hold its official meetings.

The first and principal rule to be followed, in determining whether a claim against a county is legal, is that the person making the claim must show some statute affirmatively authorizing it, either directly or by reasonable implication. *County of Santa Cruz* v. *Barnes*, 9 Ariz. 42, 76 Pac. 621. And the right of an officer to demand expenses incurred by him in the performance of his official duty is no exception to the rule. *Mackenzie* v. *Douglas County*, 81 Or. 442, 159 Pac. 625, 1033; *Parsons* v. *Waukesha County*, 83 Wis. 288, 53 N. W. 507. All other considerations are subordinate to these. Nor, indeed, is this disputed by defendants. It is their claim, however, that the Arizona statutes do authorize the allowance of such mileage, and in support thereof they cite the following sections of the Revised Code of 1928:

"§ 776. . . . The expense of maintaining the government consists of official salaries, fees and mileage, fees and mileage of jurors. . . . "

"§ 889. . . . The following are county charges: . . . The salaries of all county and precinct officers,

their deputies and employees and the necessary expenses incurred by them in the conduct of their offices. . . . The contingent expenses necessarily incurred for the use and benefit of the county; every other sum directed by law to be raised for any county purpose or declared to be a county charge. . . . ''

"§ 2803. Mileage and traveling expenses. Whenever mileage is allowed to a public officer, it shall be for each mile necessarily traveled in the discharge of his official duties, and shall be computed, unless otherwise provided, where public transportation is used, at the amount actually paid by the officer; if a private vehicle is necessarily used, such officer shall receive ten cents for each mile, to be estimated on the most direct public route. . . . ''

It is admitted that there is no provision of our statute which specifically authorizes supervisors to be paid either mileage or their actual expenses while traveling in the discharge of their duties, much less when they are going from their places of residence to the place fixed by law for their official meetings. But it is claimed that the sections of the Code above quoted by implication authorize such payment. The question then is: Do our statutes reasonably imply that supervisors should be allowed mileage for travel to and from their homes to the place of their official meetings?

In support of the claim that they do, defendants urge that supervisors by law are chosen from three separate districts in each county, and that they must be residents of the district which they represent, both at the time of the election and during all their term of office. They point out that in large counties, such as we have in Arizona, some at least of the districts in each county are so situated that supervisors residing therein would necessarily have to travel considerable distances to reach the county seat, and that it is unfair that they should be made to bear this extra expense, while supervisors residing in a district which contains the county seat would be put to no such cost.

They also contend that the Attorney General of Arizona in 1915 issued an opinion holding that expenses of the nature involved in this suit were a proper legal county charge, and that it has been the general custom of the various boards of supervisors in Arizona ever since that time, and following such opinion, to pay charges of this nature, and that such construction placed for many years by the administrative authorities upon the statute is practically binding upon the courts, particularly when the legislature has since such opinion, and after such custom had continued for many years, revised the entire statutory law of the state without changing the provisions upon which such opinion was based.

The rule of statutory construction that an unjust or absurd meaning will not be given to a statute unless it conclusively appears from the language thereof that such was the intent of the legislature is usually applied in cases where the failure to follow it would result in imposing an unjust burden upon a party against his will, and in such cases, if the language of the statute is ambiguous, the court will hesitate before giving an interpretation which will work an injustice upon the citizen. We think, however, that the facts of the case at bar do not call for the application of the rule, even if the intent of the statute were not entirely clear.

The universal rule is that he who accepts a public office takes it, not only with the rights, but the burdens attached thereto by law, and he may not complain because the burden is greater than that imposed on other officers. *County of Cook* v. *Wren,* 43 Ill. App. 388; *Albright* v. *County of Bedford;* 106 Pa. 582.

When supervisors are elected they know their respective places of residence and that they will be required to attend at the county seat to discharge their official duties. They are not obliged to seek for the office, nor to accept it if tendered them, and such being

the case, if they accept it they take it with the necessary inconveniences and inequalities attaching thereto, and may not be heard to say that the law is unjust merely because it results in unequal compensation for their services.

The point made in regard to the custom of administrative officers being of great weight in determining the meaning of a statute is more serious. That such is the general rule cannot be doubted. *Van Veen* v. *County of Graham*, 13 Ariz. 167, 108 Pac. 252; *Avery* v. *Pima County*, 7 Ariz. 26, 60 Pac. 702. This is especially true when, after a long-continued interpretation, the legislature re-enacts the statute without changing its language. *Copper Queen etc. Min. Co.* v. *Territorial Board*, 9 Ariz. 383, 84 Pac. 511; *United States* v. *Finnell*, 185 U. S. 236, 22 Sup. Ct. Rep. 633, 46 L. Ed. 890. But if the intent and purpose of the act be clear, no custom can prevail against the positive and definite terms of the law, and the courts should not follow an administrative construction which is clearly erroneous, even though continued for many years. *Louisville & Nashville R. Co.* v. *United States*, 282 U. S. 741, 51 Sup. Ct. Rep. 297, 75 L. Ed. 672; *United States* v. *Finnell, supra; In re Manhattan Savings Institution*, 82 N. Y. 142; *Van Dyke* v. *City of Milwaukee*, 159 Wis. 460, 146 N. W. 812, 150 N. W. 509; *People* v. *Sergel*, 269 Ill. 619, 110 N. E. 124.

Let us therefore determine whether the meaning of the law is indeed doubtful as contended by defendant, or clear as claimed by plaintiff. Since there is no single statute which specifically grants such mileage, we must consider together all the various sections of the Code which bear upon the matter, in order that we may decide what the law really is.

Is there a general policy of our law in regard to the compensation and expenses of public officers? The first thing which we notice in this connection is that so

far as ''compensation'' is concerned the rule is clear. Section 2799, Revised Code 1928, reads as follows:

''The salaries provided in this chapter shall be in full compensation for all services rendered by any officer, deputy or assistant. Salaries shall be paid twice in each month on regular days not more than sixteen days apart. All state or county officers, employees, members of boards and commissions not mentioned in this chapter, and all deputies, stenographers, clerks and employees of any officer, board or commission, or of any institution, shall receive the salary provided by the laws creating or authorizing their respective positions, and shall not, under any pretext, receive any salary or emolument in excess of the salary so provided by law.''

If the mileage claimed be considered as additional compensation for the services of the supervisors, as it is in many states, it is plainly illegal. But assuming it is not compensation in the strict sense of the term, is it a ''necessary expense incurred by them in the conduct of the office''? So far as state and county officers are concerned, with the sole exception of the constitutional section allowing mileage to the legislature (section 22, part 2, article 4, Constitution of Arizona), there is no provision in our law whereby any such officers are specifically allowed any allowance for the expenses of travel from their places of residence to the place where their official duties are presumed to be performed. In view of the fact that many states do expressly by statute make such an allowance to many different classes of officers, we think the omission is significant. That this was not an inadvertent failure on the part of the legislature to allow for the expenses of travel by county officers in the discharge of their official duties is shown by many sections of the Code. We cite as illustrative of this the provisions of section 2792, Revised Code 1928, regarding superior court judges, those of sec-

tions 2794 and 2797 regarding county school superintendents, and of sections 2800 and 2802 in regard to sheriffs and constables.

We also find that in the biennial appropriation bills providing for the expenses of conducting state offices, the legislature has practically invariably included specific items covering the expense of travel for those officers whose duties necessarily require that they go from their official headquarters to various places within the state, while carefully omitting any such items for those officers whose duties are performed in one place, such as the state auditor since 1923 and members of this court since its organization.

If it were the intent of the legislature to allow for traveling expenses of the nature involved herein, it is strange that nowhere in the Code did it specifically provide therefor, nor have we been cited to any decision of another state where such an expense is held a legal charge in the absence of a statute expressly covering such an item.

If the words "fees and mileage," in section 776, *supra,* and "the necessary expenses incurred by them in the conduct of their offices," in section 889, *supra,* so strongly relied on by counsel for defendants, were meant to include traveling expenses of the character presented herein, they apply with equal effect to other county officers.

Under chapter 49, Session Laws 1931, county officers may live anywhere not more than ten miles from the county seat. If all of the officers of Maricopa county should desire to reside in the town of Tempe, there is no reason we can see why they are not legally as much entitled to their daily mileage for coming to Phoenix as are the supervisors. There is no limitation upon the residence of most state officers. If the members of the corporation commission should choose to remove their homes to Chandler or Wickenburg, may they claim such mileage from the state

from the amount allowed for "travel" in their appropriation for coming daily to the Capitol to discharge their duties? The very asking of the question indicates its answer.

So far as we are advised, no public officers other than the supervisors and the members of the legislature have ever claimed they were entitled to mileage for going from their homes to their offices. This fact and the tremendous burden which would be placed upon the state and the counties by a general application of the principle contended for by defendants is of itself strong evidence, in the absence of an express statute declaring to the contrary, that the legislature never contemplated such an interpretation of the law.

We have examined carefully the cases cited by the parties, and all others which we can discover in the reports at all analogous to the present situation. Those which nearest resemble in their facts the case at bar are *County of Cook* v. *Wren, supra,* and *Albright* v. *County of Bedford, supra.* We quote from the Albright case as follows:

"The language of these Acts is clear and positive. Their unmistakable purpose is to fix the entire compensation which the commissioners can draw from the county treasury. Not only shall they be paid by the day; but for the whole time they are necessarily employed in attending to the duties of their offices they shall be thus paid. There is no provision for any other or different pay. No allowance for mileage, traveling expenses or boarding bills is prescribed.

"They derive their powers and authority, as well as their compensation, from the law. They can no more enlarge the one than the other.

"It is conceded that no statute requires the commissioners to hold appeals in different parts of the county. It is a custom which appears to have been introduced in many counties of the state to suit the convenience of the people. No statute prohibits it. The Act of 15th of April, 1834, expressly declares they shall keep their office and all public records

and papers belonging thereto, at the seat of justice of the respective county and in such building as may be erected or appropriated for such purpose. We are not aware that it has ever been claimed, when a commissioner resides away from the county seat, that he is entitled to demand compensation, or reimbursement, for expenses incurred in traveling to and from the seat of justice, nor his boarding bills or the keeping of his horses, while there. We do not see why such claim might not be made with equal propriety. In either case they are the personal expenses of the commissioner necessarily incurred in going to and remaining at a place in the discharge of his official duties. The statute makes no provision for the payment of such items out of the county treasury. Whether he goes to the county seat or whether he goes out of it, to discharge his official duties, the law prescribes a daily pay only. This is not to be in addition to his expenses. They are matters for which the law does not provide, and for which the county is not liable. When a positive law clearly prescribes the manner and nature of the compensation to be paid to a public officer, the directions of that law should be the only rule and measure of the officer's claim on the public moneys: *Brown* v. *Commonwealth,* 2 Rawle [Pa.] 40. No presumption arises either from the duties of his office or from previous custom or usage, enlarging his compensation. Although different and other compensation may have long been recognized and sanctioned, yet when it comes in conflict with the later and positive law, it must yield to the latter. As was well said by Mr. JUSTICE WILLIAMS, in speaking of a public officer, in *Godshalk* v. *Northampton County,* 21 P. F. Smith [71 Pa.] 324 'in no case should charges for services exceeding the compensation allowed by law, be sanctioned or tolerated.' "

In that case the court held, in substance, that even the traveling expenses of the commissioners from place to place in the county in the performance of their official duties were not proper county charges.

It is not necessary for us to decide in this case whether the phrase in our Code in regard to the

"necessary expenses incurred by them in the conduct of their offices" would be held to include such expenses, but we think it is going entirely too far to hold that the traveling expenses of officers from their places of residence to their offices are a "necessary expense" in the conduct of their office, in the absence of a statute expressly or by conclusive implication allowing the same. If the legislature in its wisdom so desires, it can, of course, in the future expressly allow such mileage; but in view of the momentous consequences which would result if the present statutes allow it, we cannot conceive such to have been their past intention.

We are of the opinion that the trial court correctly held that mileage for supervisors while traveling from their homes to the county seat to attend meetings of the board is not a legal county charge, and it therefore properly rendered judgment against defendants in accordance with the provisions of section 790, *supra.*

We think, however, the court was in error when it included in the judgment twenty per cent. additional on the interest. The reasonable interpretation of the statute is that the extra twenty per cent. is allowed only on the money actually paid out and not on the interest thereon.

Objection is also made to the allowance of an attorney's fee under section 791, *supra,* on the ground that such attorney's fee is unconstitutional. If the fee were allowed as a matter of costs, the contention of defendants would be correct. *Massachusetts Bonding & Ins. Co.* v. *Lentz,* 40 Ariz. 46, 9 Pac. (2d) 408; *Union Terminal Co.* v. *Turner Construction Co.,* (C. C. A.) 247 Fed. 727, 11 A. L. R. 880. When, however, an attorney's fee is allowed by statute as a penalty, or as part of a penalty for the violation of a statute, the courts with few exceptions have upheld the constitutionality of such fee. *Atchison, T. & S.*

*F. R. Co.* v. *Matthews,* 174 U. S. 96, 19 Sup. Ct. Rep. 609, 43 L. Ed. 909; *St. Louis, I. M. & S. R. Co.* v. *Williams,* 251 U. S. 63, 40 Sup. Ct. Rep. 71, 64 L. Ed. 139; *Engebretsen* v. *Gay,* 158 Cal. 30, 109 Pac. 879.

In this case the attorney's fee is undoubtedly a penalty imposed upon the public officer for the violation of his official duty, just as much as is the twenty per cent. additional provided for in section 790, *supra.* The language of section 791 itself differentiates between ''costs'' and ''attorney's fees.''

We think it but just to the defendants Austin and Gilbert to state that in our opinion there was no intentional misconduct or violation of the law on their part. They but followed a custom of long standing, authorized many years previously by an opinion of the Attorney General of this state, and while such custom was illegal, and we must necessarily under the law affirm the judgment of the lower court as herein modified, we do not wish the impression to prevail that they have been guilty of deliberate wrongdoing.

The judgment against the defendant Gilbert is modified by substituting for the words, ''20% additional thereto, being the further sum of $102.65, being a total of $616.05,'' the words, ''20% additional to the principal sum above, being the further sum of $96.88, being a total of $610.28,'' and the judgment against the defendant Austin is modified by substituting therein for the words, ''20% additional thereto, being the further sum of $165.65, being a total of $914.05,'' the words, ''and 20% additional to the principal sum above, being the further sum of $160.09, being a total of $1008.46,'' and as so modified the judgments are affirmed.

McALISTER, C. J., and ROSS, J., concur.