847 P.2d 1124

**Peter Donald SAUNDERS,
Petitioner/Appellant,**

v.

**BOARD OF PARDONS AND PAROLES; Robert Goldsmith, Warden, Arizona State Prison Complex, Florence, Arizona; Arter L. Johnson, Chairman, Arizona Board of Pardons and Paroles, Respondents/Appellees.**

**No. CV–91–0350–PR.**

Supreme Court of Arizona,
En Banc.

March 2, 1993.

---

Grant Woods, Atty. Gen. by Robert J. Sorce, Karen L. Lugosi, Asst. Attys. Gen., Phoenix, for respondents/appellees.

Peter Donald Saunders, in pro per.

H. Allen Gerhardt, Jr., Pinal County Public Defender, Florence, for petitioner/appellant.

## OPINION

CORCORAN, Justice.

The Board of Pardons and Paroles (Board) petitioned this court to review a court of appeals decision reversing the trial court's denial of Peter Donald Saunders' (Saunders) petition for writ of habeas corpus. The issue presented is whether a prisoner granted parole on an original sentence pursuant to A.R.S. § 31–412(B) for the sole purpose of serving a consecutive sentence must be released from prison after serving the consecutive sentence. We granted review, and we have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), A.R.S. § 12–120.24, and Rule 31.19, Arizona Rules of Criminal Procedure.

## FACTS AND PROCEDURAL HISTORY

In 1951, Saunders was convicted of first degree murder and sentenced to life in prison. This sentence was commuted in 1963 to 25 years to life, and in 1964 Saunders was paroled. Saunders' parole was revoked in 1968, and he was returned to prison. Saunders escaped from custody in 1970, and he was returned to prison the day after his escape. He escaped again in 1972, and he was returned to prison two days later. After a second parole in 1978, Saunders absconded, and he was eventually returned to prison in 1981 after revocation of his parole. In 1983, Saunders escaped from prison a third time. After his capture, he was convicted of escape and sentenced to a 4–year term, to be served *consecutive* to his murder sentence.

In 1985, the Board granted Saunders an A.R.S. § 31–412(B) parole from his murder sentence so that he could begin serving his consecutive escape sentence. After his escape sentence expired and the Department of Corrections did not release him from prison, Saunders filed a petition for writ of habeas corpus in superior court, asserting that he was being illegally confined on a sentence for which he had been paroled.

The trial court denied Saunders' petition for writ of habeas corpus, and Saunders appealed. The court of appeals reversed, holding that Saunders was entitled to be released from prison on parole on the murder conviction upon the expiration of his escape sentence. *Saunders v. Goldsmith,* 169 Ariz. 428, 430, 819 P.2d 1014, 1016 (App.1991). The Board petitioned for, and we granted, review.[1] For the reasons stated below, we vacate the opinion of the court of appeals and affirm the trial court's denial of Saunders' petition for writ of habeas corpus.

## DISCUSSION

Arizona's parole statute, A.R.S. § 31–412, provides in part:

A. If a prisoner is certified [by the director] as eligible for parole ... the board of pardons and paroles shall authorize the *release* of the applicant upon parole *if the applicant has reached his earliest parole eligibility date* ... and it appears to the board, in its sole discretion, that there is a *substantial probability that the applicant will remain at liberty without violating the law.* The applicant shall thereupon be allowed to go upon parole in the legal custody and under control of the department of corrections, until expiration of the term specified in his sentence or until his absolute discharge.

B. *Notwithstanding the provisions of subsection A of this section,* any prisoner ... who has served a term of imprisonment ... may be certified by the director as eligible for parole *for the sole purpose of parole to the custody of ... the state department of corrections to serve any consecutive term imposed on such prisoner.* Upon review of an application for parole pursuant to the provisions of this subsection the board may

authorize such parole if, in its discretion, such parole appears to be *in the best interests of the state.*

(Emphasis added.) The Board paroled Saunders from his murder sentence to serve his escape sentence under the authority of subsection (B) of this statute. The court of appeals determined that a subsection (B) parole "permit[s] the earlier of consecutive sentences to be subject to parole with the condition that the parole be served in prison for the duration of the consecutive sentence ... [and] Saunders was entitled to be released on parole on the murder conviction upon the expiration of his sentence on the escape conviction." *Saunders,* 169 Ariz. at 430, 819 P.2d at 1016. The Board challenges this holding and contends that parole pursuant to subsection (B) simply makes previously consecutive sentences concurrent, and therefore, upon the expiration of his escape sentence, Saunders was required to continue serving his murder sentence until either that sentence expired or he was released on parole under subsection (A). We agree with the Board.

Saunders argues, however, and the court of appeals agreed, that once his consecutive sentence expired, Saunders should have been released from prison because he had been "paroled" on his murder conviction to begin serving his escape sentence. This argument is based on the definition of "parole" found in *Mileham v. Board of Pardons,* 110 Ariz. 470, 520 P.2d 840 (1974). *See also Thomas v. Board of Pardons,* 115 Ariz. 128, 130, 564 P.2d 79, 81 (1977) (reciting the definition of "parole" found in *Mileham*). We believe, however, that a different *type* of parole is established under subsection (B).

■ To determine the effect of a parole granted pursuant to subsection (B), we

1. The Board paroled Saunders on the murder sentence pursuant to § 31–412(A) after we granted review of this case; therefore, the § 31–412(B) issue raised here is moot as to Saunders.

We retain jurisdiction in this case, however, because we disagree with the court of appeals' decision, and we believe it is important to clarify the effect of a § 31–412(B) parole for the benefit of both the Board and prisoners granted

parole under this subsection. *See City of Flagstaff v. Mangum,* 164 Ariz. 395, 400, 793 P.2d 548, 553 (1990) (supreme court will consider moot issue "if significant questions of public importance are presented and are likely to recur") (citations omitted); *Big D Constr. Corp. v. Court of Appeals,* 163 Ariz. 560, 562–63, 789 P.2d 1061, 1063–64 (1990) (same) (citation omitted).

must consider both the intent of the legislature and the plain meaning of the statute. *State v. Wagstaff,* 164 Ariz. 485, 490, 794 P.2d 118, 123 (1990), *citing Martin v. Martin,* 156 Ariz. 452, 457, 752 P.2d 1038, 1043 (1988). *See also* A.R.S. §§ 1–211(B) (statute to be "liberally construed to effect [its] object[ ] and to promote justice"); 1–213 (statute to be construed according to its plain meaning). Analyzing the intent of the legislature, we note that subsection (B) was enacted after we held, in *Mileham,* 110 Ariz. 470, 520 P.2d 840, that a prisoner had to serve his *complete* original sentence before he could begin serving his consecutive sentence; the Board had no authority to parole a prisoner from an original sentence to a consecutive sentence.

The *Mileham* decision was based on our interpretation of the word "parole" to mean "a conditional *release from imprisonment* which entitles the parolee to serve the remainder of his term *outside the confines of an institution,* if he satisfactorily complies with all the terms and conditions provided in the parole order." *Mileham,* 110 Ariz. at 473, 520 P.2d at 843, *citing State ex rel. Murray v. Swenson,* 196 Md. 222, ·76 A.2d 150 (1950) (emphasis added). We interpreted the term "parole" in this manner because § 31–412, *as it existed in 1974,* stated that a prisoner could be paroled only if the Board determined that he would "live and remain *at liberty* without violating the law...." (Emphasis added.)[2] This rule is now embodied in subsection (A) of § 31–412. The legislature added subsection (B) in 1978 after our *Mileham* decision.

**2.** The 1974 version of § 31–412 read:

If it appears to the board of pardons and paroles ... that there is reasonable probability that the applicant will live and remain at liberty without violating the law, then the board may authorize the release of the applicant upon parole. The applicant shall thereupon be allowed to go upon parole in the legal custody and under control of the department of corrections, until expiration of the maximum term specified in his sentence or until his absolute discharge.

**3.** Saunders argues that this interpretation of subsection (B) violates the separation of powers doctrine. We find this argument to be without merit.

Upon entry of a final judgment and sentence of imprisonment, legal authority over the ac-

*See* 1978 Laws Ch. 164, § 15. Therefore, the legislature must have intended a different result under subsection (B). *See State v. LaBarre,* 125 Ariz. 497, 499, 610 P.2d 1058, 1060 (App.1980) (subsection (B) provides the missing statutory authority which would have avoided the result in *Mileham*), *adopted and approved, Cawley v. Board of Pardons,* 145 Ariz. 380, 701 P.2d 1188 (1985).

The fact that the legislature intended to provide a different result under subsection (B) is evident from the *"[n]otwithstanding the provisions of subsection A "* language found in subsection (B). (Emphasis added.) The subsection (B) result contemplated by the legislature is evident from its plain language. Subsection (B) states that a prisoner may be paroled "for the *sole purpose* of parole to the *custody of ... the department of corrections to serve any consecutive term* imposed on such prisoner." (Emphasis added.) This "sole purpose" language indicates that the legislature intended to create a new type of parole *only* for the purpose of allowing a defendant to serve a consecutive term, and that such parole automatically terminates upon the completion of the consecutive sentence. The legislature obviously intended to change the result of our *Mileham* decision and to authorize the Board to parole a prisoner to his consecutive sentence before the expiration of his original sentence, thus effectively converting a consecutive sentence into a concurrent sentence.[3]

cused passes by operation of law to the Department of Corrections and the Board of Pardons and Paroles. These executive agencies bear full responsibility for executing the judgment and sentence as well as for determining the terms and conditions upon which parole may be granted. Their responsibilities are carried out pursuant to duly enacted statutes....

*Wagstaff,* 164 Ariz. at 488–89, 794 P.2d at 121–22 (citations omitted). There is no separation of powers problem here, just as there is no separation of powers problem when the Board releases a prisoner from prison on parole under subsection (A) before the sentence imposed by the trial court expires.

In addition, the fact that subsections (A) and (B) paroles have *different standards* for parole indicates that the legislature envisioned a new type of parole under subsection (B). Subsection (A) authorizes a release from prison if "there is a substantial probability that the applicant will remain at liberty *without violating the law*." (Emphasis added.) *See Mileham*, 110 Ariz. at 472, 520 P.2d at 842. Subsection (B), on the other hand, authorizes parole to a consecutive sentence if "such parole appears to be *in the best interests of the state*." (Emphasis added.) This is a much more flexible standard than that required by subsection (A). Given this more flexible standard, we do not believe the legislature intended to authorize a release from prison upon the expiration of a consecutive sentence. If it had intended such a result, the legislature would have required that the release standard enumerated in subsection (A) also be met by any prisoner paroled under subsection (B).[4]

Finally, we refuse to adopt the court of appeals' interpretation of subsection (B) because such an interpretation would lead to an absurd result. *See State v. LeMatty*, 121 Ariz. 333, 337, 590 P.2d 449, 453 (1979) ("[A] practical construction is preferred to one which is absurd, and a practical construction is required if a technical construction would lead to mischief or absurdity."). First, the court of appeals' interpretation allows the release of possibly dangerous criminals who have already been "paroled" to a consecutive sentence under subsection (B) and who would not be required to meet the subsection (A) release standard. Second, this interpretation would lead to the Board's inability to use subsection (B) in the future because of an unwillingness to decide many years in advance whether a prisoner should be released to the streets upon the termination of his consecutive sentence. For all of these reasons, we decline to adopt the court of appeals' interpretation of subsection (B).

Contrary to the conclusion of the court of appeals and Saunders' contention, our interpretation of subsection (B) is consistent with *LaBarre*. *LaBarre* analyzed a prisoner's multiple convictions to determine his eligibility for parole under subsection (B) on each individual conviction. The court of appeals determined that by conducting this detailed analysis, the *LaBarre* court did not construe subsection (B) "as merely converting consecutive sentences into concurrent ones." *Saunders*, 169 Ariz. at 429, 819 P.2d at 1015. We disagree. *LaBarre* stands for the proposition that despite our holding in *Mileham*, a prisoner is eligible for parole under subsection (B) on the original sentence after serving the statutory period for that sentence, even though, if paroled, he will not be released from prison but will begin serving time on the consecutive sentence. 125 Ariz. at 498–500, 610 P.2d at 1059–61. Moreover, the *LaBarre* court specifically stated that once the prisoner there served each of his consecutive sentences, he would be eligible "to *apply* for *parole release from prison*...." 125 Ariz. at 500, 610 P.2d at 1061 (emphasis added). This statement obviously refers to parole release under subsection (A); thus, our opinion today does not conflict with *LaBarre*, but merely clarifies the application of subsection (B).

The Board has consistently applied subsection (B) as it did in this case. Such application has great utility because it permits the Board to allow prisoners to serve consecutive sentences concurrently with their original sentences and provides a

---

4. The Board claims, and we agree, that the legislature, through subsection (B), intended to provide the Board with a "prisoner control mechanism": the possibility of having a consecutive sentence converted to a concurrent sentence under subsection (B) provides prisoners with an incentive to behave properly in prison.

In addition, subsection (B) also helps the Board address prison overcrowding and other prison issues because it permits a prisoner serving consecutive sentences to be released from prison sooner than under the previous version of § 31–412. Once a consecutive sentence is served, the Board may grant an eligible prisoner a subsection (A) parole on the original sentence. Before the enactment of subsection (B), a prisoner could not be released from prison on parole until his original sentence expired and he served the minimum time required on his consecutive sentence. *Mileham*, 110 Ariz. at 473, 520 P.2d at 843.

means of inmate control. The Board has correctly interpreted subsection (B) and may continue to "parole" prisoners in this manner as long as such parole is in the best interests of the state.

## DISPOSITION

■ Parole from an original sentence to a consecutive sentence pursuant to A.R.S. § 31–412(B) does not permit a prisoner's release from prison until such time as the original sentence expires or the prisoner is paroled on the original sentence pursuant to A.R.S. § 31–412(A). The court of appeals' opinion is vacated, and the trial court's denial of Saunders' petition for writ of habeas corpus is affirmed.

MOELLER, V.C.J., concurs.

FELDMAN, C.J., specially concurring.

I concur in the result reached by the court and, for the most part, with the analysis leading to that result. I write separately only because I cannot agree with the concept, implicit in the court's opinion, that we are following the *intent of the legislature*. At 179–181, 847 P.2d at 1126–1128. While I agree that the legislature must have intended to change the reach of the statute as we had construed it in *Mileham v. Board of Pardons*, 110 Ariz. 470, 520 P.2d 840 (1974), I do not know just how far the legislature intended to go or what it intended to accomplish in working that change. It has not provided us with a legislative history and has adopted a statute that lends itself to various interpretations, including the rational but diametrically opposed constructions proposed in both the court's opinion and in the dissent.

Given the absence of any legislative history and the ambiguous wording of the statute, I cannot find any specific legislative intent on the question before us. To decide the present case, we must come closer to writing the statute than to reading it. Nevertheless, and to some degree intuitively, I believe the court's opinion advances a more likely interpretation than that advanced by the dissent. I also believe that, *in this case*, it is better to follow the administrative interpretation that evi-

dently has been given this statute since its adoption. *See* Op. at 181, 847 P.2d at 1128; *see also Austin v. Barrett*, 41 Ariz. 138, 144, 16 P.2d 12, 14 (1932). I recognize, of course, that longstanding administrative practice provides little legitimacy for erroneous construction or interpretation when text or intent is clear. *Id.* In this case, however, where neither text nor intent is clear, administrative interpretation provides some support. That interpretation has never before been challenged on this point, and reversing that interpretation might lead to very untoward results by requiring the release on parole of many prisoners whom the Board had not intended to set at large in the community.

For these reasons, I join in the judgment.

ZLAKET, Justice, dissenting.

Because I believe the court of appeals correctly interpreted A.R.S. § 31–412(B), I respectfully dissent.

Had the legislature intended to permit the parole board to transform consecutive into concurrent prison sentences, it could have explicitly said so. More importantly, had it intended to require a prisoner, who has been paroled to and has completed a consecutive sentence, to thereafter serve out the remainder of the original sentence from which he or she was paroled, the legislature most certainly should have said so. Yet both the statute and its legislative history are silent on these issues. While I appreciate the role of statutory construction in our legal process, I believe the majority here goes too far. We should not ascribe to the legislature an intent it never expressed, simply because the result may be more to our liking.

Everyone agrees the legislature enacted A.R.S. § 31–412(B) in response to *Mileham v. Arizona Board of Pardons and Paroles*, 110 Ariz. 470, 520 P.2d 840 (1974), which prohibited parole to a consecutive sentence. The statute removes this prohibition. It allows a prisoner to be "paroled" from a first sentence to begin serving a second, consecutive sentence when he or she is "certified by the director as eligible

for parole" and the board of pardons and paroles "in its discretion" decides that "such parole appears to be in the best interests of the state."

This statute obviously cannot mean "parole" in the strictest sense, because its application does not immediately bring about a "release from imprisonment." *See Mileham,* 110 Ariz. at 472–73, 520 P.2d at 842–43. In my opinion, however, the word "parole" here still embodies the idea that the prisoner has—like the typical parolee—completed that portion of the first sentence which must be served in prison, even though he or she remains a prisoner serving a separate and distinct consecutive sentence. As this court has already recognized, one can simultaneously be "a parolee from the first sentence," and "a prisoner serving time on the second." *Cawley v. Arizona Board of Pardons and Paroles,* 145 Ariz. 387, 389, 701 P.2d 1195, 1197 (App.1984), *approved and supplemented,* 145 Ariz. 380, 701 P.2d 1188 (1985). Therefore, once the second sentence has been completed, the parolee should be free to go. This interpretation is far more compatible with traditional notions of parole than that espoused by the majority. Moreover, nothing in the statute, or in *Mileham,* compels an opposite conclusion.

I agree that parole to a consecutive sentence provides authorities with a prisoner control mechanism and helps address overcrowding by permitting early releases. These desirable goals are in no way frustrated, however, by the court of appeals' reading of the statute. Its interpretation of subsection (B) does not lead to an "absurd result" by requiring the board to decide "many years in advance" whether a prisoner should be released to the streets. Op. at 181–182, 847 P.2d at 1128–1129. The conditions placed on a subsection (B) parolee can and should require him or her to behave in a manner that would justify release at the end of the second term. Violation of those conditions would result in revocation of parole on the original sentence. Thus, a prisoner serving the consecutive sentence has more than ample incentive to behave during that imprisonment.

Under any interpretation, subsection (B) provides a procedure intended to be used sparingly and with caution. A person likely to break the law if released should not be granted a subsection (B) parole. It is difficult to understand how the "best interests of the state" can ever be served by paroling someone who poses a danger. Thus, it only makes sense to infer a legislative intent that an inmate not be paroled from a first sentence to a second unless he or she is otherwise eligible for release. For this reason, the "different standards" discerned by the majority in subsections (A) and (B) of the statute do not support its interpretation. The "best interests of the state" language of subsection (B), while more flexible than the "remain at liberty without violating the law" language of subsection (A), is not inconsistent with it.

Significantly omitted from the majority's recitation of the statute and its analysis is the fact that subsection (B) also provides for parole of an Arizona prisoner to "any other jurisdiction to serve a term of imprisonment imposed by such jurisdiction." This further undermines the majority's position, since nowhere does the statute say or imply that upon expiration of the prison term in the "other jurisdiction," the prisoner must be returned to Arizona until the remainder of the Arizona sentence has been served, or until a subsection (A) parole is granted.

I am also not persuaded by the majority's assertion that "the Board has consistently applied subsection (B) as it did in this case." At 181, 847 P.2d at 1128. There is no record before us supporting this statement. In any event, though we often give deference to administrative interpretations of statutes, those interpretations are not binding on us. *City of Mesa v. Killingsworth,* 96 Ariz. 290, 296, 394 P.2d 410, 414 (1964).

For all these reasons, I would hold that a prisoner serving a subsequent sentence pursuant to a subsection (B) parole is entitled to release from prison on the termination of that sentence, so long as he or she has not violated the conditions of the

parole. I would affirm the court of appeals and reverse the trial court.

MARTONE, J., concurs.