921 P.2d 24

**TRANSPORTATION INSURANCE COMPANY, a Foreign Corporation, Plaintiff/Appellee,**

v.

**Edith BRUINING, an Unmarried Woman; Joe Meyer and Judith Meyer, Unmarried Individuals d/b/a Joe Meyer Landscape Maintenance; Jesse Frank Rogers and Jane Doe Rogers, Husband and Wife, Defendants/Appellants.**

No. CV–95–0370–PR/A.

Supreme Court of Arizona, En Banc.

July 2, 1996.

Beale & Micheaels, P.C. by John A. Micheaels, Phoenix, and Jennings, Strouss & Salmon, P.L.C. by James M. Ackerman, Phoenix, for Plaintiff/Appellee.

Tryon, Heller & Rayes, P.C. by David M. Heller, Phoenix, for Defendants/Appellants.

## OPINION

MOELLER, Justice.

### STATEMENT OF THE CASE

A.R.S. § 28–1170(B)(3) provides that an insurer and a named insured may exclude coverage for a named driver in an automobile liability policy "by agreement in writing." The issue in this case is whether this statuto-ry requirement was met so as to exclude one of the insured's employees. On cross-motions for summary judgment, the trial court ruled that the statutory requirement had been met, resulting in no liability coverage for an accident in which the employee in question was one of the drivers. In a split decision order on accelerated appeal, the court of appeals affirmed. We granted review and have jurisdiction pursuant to Ariz. Const. art. VI, § 5(3). We reverse.

### FACTS AND PROCEDURAL HISTORY

In December 1991, Transportation Insurance, Co. (the insurer), through Schaefer–Smith–Ankeney (the agent), sent an endorsement to Joe Meyer Landscaping (the insured), requesting that one of the insured's employees, Jesse Rogers, be excluded from coverage under an existing policy that was due to expire September 1, 1992. The insured agreed to the exclusion and signed and returned the form to the insurer. The insurer concedes that this exclusion had an expiration date of September 1, 1992—the date the policy expired.

Prior to the expiration of the policy, the insured requested the insurer to reconsider its exclusion of Rogers for purposes of a renewal policy to begin September 1, 1992. Also prior to the expiration of the policy, the insurer sent a renewal rate quote to the agent. The quote included the phrase "Coverage and conditions as per expiring." On August 27, 1992, a few days before expiration of the old policy, representatives of the insured met with a representative of the agent. The representatives then agreed to renew the policy based on the quote. The record is not clear as to whether the insured's representatives saw or were advised of the "as per expiring" language in the quote, but none of the documents relating to the renewal indicate any written agreement on the part of the insured to exclude Rogers. Ultimately, some time after the old policy expired, the insurer provided coverage under a renewal policy for the stated period September 1, 1992 to September 1, 1993, and the insured

began making premium payments.[1] On September 14, 1992, the insurer advised the agent that it would not agree to insure Rogers, and the agent immediately informed the insured both by telephone and by letter of that fact. The letter stated that an exclusion form for the insured's signature would shortly be forwarded to the insured. The insured made no response.

On Nov. 5, 1992, before the exclusion form was sent to the insured by the agent, employee Rogers, while driving a company truck, was involved in an accident which injured Edith Bruining. Sometime between November 16 and November 24, 1992, the insured received the driver exclusion form from the agent requesting the insured to sign and return the form excluding Rogers from the policy retroactive to September 1, 1992. The insured never signed the form.

The insurer sought a declaratory judgment that it did not provide coverage for Ms. Bruining's injuries. It argued that Rogers was excluded from the policy because the insured had been informed that the insurance company would not reconsider its previous decision to exclude him and that the insured had agreed to the terms of the renewal policy quote which included the phrase "as per policy expired." The insured, on the other hand, argued that the original exclusion expired when the previous policy expired and that if the insurer wanted to exclude Rogers from the new policy, A.R.S. § 28–1170(B)(3) required it to obtain a new written agreement from the insured.

 The trial court granted summary judgment for the insurer, ruling that it had complied with § 28–1170(B)(3) and, therefore, Rogers was excluded and was not an insured. A divided court of appeals agreed in a decision order. Our standard of review of this legal issue is de novo. *Tallent v. National Gen. Ins. Co.*, 185 Ariz. 266, 267, 915 P.2d 665, 666 (1996).

## DISCUSSION

### I. There Was No Compliance With A.R.S. § 28–1170(B)(3).

 Arizona's version of the Uniform Motor Vehicle Safety Responsibility Act, A.R.S. §§ 28–1101 to –1261, requires insurers to provide coverage for the person named in a motor vehicle liability policy and any permissive drivers of the insured. A.R.S. § 28–1170(B)(2). Subsection 28–1170(B)(3) provides a method by which named drivers may be excluded:

> [A motor vehicle liability policy] may by agreement in writing between any named insured and the insurer exclude as insured any person or persons designated by name when operating a motor vehicle.

The public policy behind the requirement of an "agreement in writing" is to require a bright-line rule of compliance in order to exclude coverage for a particular driver. This protects parties to the insurance contract and is intended to prevent the type of dispute we have before us now. *See Estate of Ball v. American Motorists Ins. Co.*, 181 Ariz. 124, 125, 888 P.2d 1311, 1312 (1995) ("The purpose of [requiring written offers of underinsured motorist coverage] is to avoid post-claim disputes about coverage . . . .").

In this case, the insurer obtained the statutorily required agreement in writing to exclude Rogers from the 1991–92 policy, but it failed to obtain such an agreement for the 1992–93 policy. We do not believe that inclusion of the phrase "per policy expiring" on the rate quote sent to the agent rises to the statutory requirement of an agreement in writing, even assuming the insured learned of the language (an assumption unsupported by the record). Nor do we believe that an unacknowledged unilateral notice from the insurer to the insured professing the insurer's desire not to cover an individual constitutes an "agreement in writing" within the meaning of the statute. The insurer could have conditioned policy renewal on receipt of the insured's agreement in writing. It did

---

1. In the meantime, upon expiration of the 1991–92 policy, coverage was provided under a binder which was eventually superseded by the renewal policy. Given our view of the case and the insurer's concession that the 1991–92 policy with its exclusion of Rogers expired on September 1, 1992, we do not reach the insured's alternative argument concerning the alleged applicability of § 20–1631 *et seq.*

not. *See State Farm Auto. Ins. Co. v. Dressler,* 153 Ariz. 527, 528, 738 P.2d 1134, 1135 (App.1987); *Torrez v. State Farm Mut. Auto. Ins. Co.,* 130 Ariz. 223, 227, 635 P.2d 511, 515 (App.1981).

It is important to note that this case is governed not only by the rules of contract law which apply to agreements between two private individuals but is also governed by the public policy concerns inherent in our Safety Responsibility Act. This case involves an automobile liability policy, a highly regulated commodity in a highly regulated industry. The legislature has seen fit to require an agreement in writing in order to exclude a particular driver from coverage. To comply with the statute when seeking to exclude a named driver, the insurer in this case uses a form for the insured to sign. Here, no such form was signed for the policy year 1992–93. We are not holding that in all cases the signature of an insured is required, but surely the statutory language "an agreement in writing" contemplates something more than an ex parte utterance or writing by the insurer which is unacknowledged by the insured. Under the facts of this case, we hold there was no compliance with § 28–1170(B)(3) insofar as the renewal policy is concerned, and the trial court erred in holding to the contrary.

## II. Effect of Non-compliance With § 28–1170(B)(3).

The insurer argues that failure to comply with § 28–1170(B)(3) only has the effect of making it responsible for amounts up to the statutory minimum. This argument is based on A.R.S. § 28–1170(G), which provides:

A policy which grants the coverage required for a motor vehicle liability policy may also grant lawful coverage in excess of or in addition to the coverage specified for a motor vehicle liability policy and the excess or additional coverage shall not be subject to the provisions of this chapter. With respect to a policy which grants the excess or additional coverage the term "motor vehicle liability policy" shall apply only to that part of the coverage which is required by this section.

If this statute applies to reduce coverage from the amount stated in the policy, coverage in this case will be limited to $15,000 for bodily injury to one person. A.R.S. § 28–1170(B)(2)(a).

We considered the impact of subsection (G) in *Arceneaux v. State Farm Mut. Auto. Ins. Co.,* 113 Ariz. 216, 550 P.2d 87 (1976). The policy at issue in that case contained a "household exclusion" which violated the public policy of the Motor Vehicle Safety Responsibility Act. *Arceneaux,* 113 Ariz. at 217, 550 P.2d at 88. We held that the household exclusion did apply to coverage in excess of the amount required by the Act ($15,000), and we specifically held that language to the contrary in one of our prior cases was "pure dictum." *Id.* at 218, 550 P.2d at 89 (disavowing *Sandoval v. Chenoweth,* 102 Ariz. 241, 247, 428 P.2d 98, 104 (1967)). We said: "In matters not mandated by law (or the public policy of the state), the parties should be permitted to make their own contractual arrangements" and that "the plain import of [§ 28–1170(G) ] indicates that coverage, in addition to the amount mandated by the Vehicle Safety Responsibility Act, shall not be subject to the provisions of the Act." *Arceneaux,* 113 Ariz. at 217–18, 550 P.2d at 88–89.

Post–*Arceneaux* cases in Arizona have applied *Arceneaux* 's holding to invalidate contractual provisions in policies that violated the Motor Vehicle Safety Responsibility Act, but only to the extent that such contractual provisions reduced coverage to an amount below the required statutory coverage. *See Spain v. Valley Forge Ins. Co.,* 152 Ariz. 185, 188, 731 P.2d 80, 83 (1985) (reducing uninsured motorist coverage by amounts paid on a liability policy); *McClellan v. Sentry Indem. Co.,* 140 Ariz. 558, 562–63, 683 P.2d 757, 761–62 (1984) (excluding government-owned vehicles from uninsured motorist policy).

However, the common feature in each of these cases was an explicit written policy provision which the courts determined could be given effect once a conflicting statutory provision was satisfied. Similarly, all of the cases cited by the insurer in support of its argument to limit liability to the statutorily

required amounts involved signed exclusion endorsements which were apparently current at the time of the accidents in question, although they ran afoul of applicable statutes. *Ward v. Baker,* 188 W.Va. 569, 425 S.E.2d 245, 246–47 (1992) (named driver excluded beyond the policy expiration date and into renewal policy period by the terms of the exclusion endorsement); *Beacon Ins. Co. v. State Farm Mut. Ins. Co.,* 795 S.W.2d 62, 62 (Ky.1990); *Jones v. Motorists Mut. Ins. Co.,* 177 W.Va. 763, 356 S.E.2d 634, 635 (1987); *Allstate Ins. Co. v. United States Fidelity & Guar. Co.,* 619 P.2d 329, 331 (Utah 1980).

In this case, it is conceded that the policy containing the signed endorsement excluding Rogers from the 1991–92 policy expired September 1, 1992, two months before the accident. The insurer failed to obtain an agreement in writing to exclude Rogers for the 1992–93 renewal policy as required by § 28–1170(B)(3).

We find the *Arceneaux* rationale inapplicable to the present situation. Section 28–1170(B)(3) provides a method by which named drivers may be excluded. That method was not used. Even without the statute specifically applicable here, exclusions must "be intended and agreed to, not merely imposed." *See Averett v. Farmers Ins. Co. of Arizona,* 177 Ariz. 531, 534, 869 P.2d 505, 508 (1994). This case differs from the *Arceneaux*-type case in which, theoretically at least, the insured and the insurer have agreed to exclusions or coverage limitations but a statute conflicts with their agreement. Here, there is no such limiting agreement, and the insured is therefore entitled to the benefits of the policy as written.

## DISPOSITION

The decision order of the court of appeals is vacated and the judgment of the trial court is reversed with directions to enter a declaratory judgment in favor of petitioners in accordance with this opinion.

FELDMAN, C.J., ZLAKET, V.C.J., MARTONE, and C. KIMBALL ROSE, JJ.

ROBERT J. CORCORAN, J. (Retired) did not participate in the determination of this matter. Pursuant to article VI, section 3 of the Arizona Constitution, C. KIMBALL ROSE, Judge (Retired), was designated to sit in his stead.