986 P.2d 252

**LA PAZ COUNTY, Plaintiff–Appellee,**

**v.**

**Gregory Q. UPTON, Defendant–Appellant.**

**No. 1 CA–CV 98–0607.**

Court of Appeals of Arizona, Division 1, Department B.

July 13, 1999.

Janet A. Napolitano, The Attorney General by Kathryn L. Leonard, Assistant Attorney General, Phoenix, Attorneys for Plaintiff–Appellee.

Campana, Vieh, Shore, Owens & Loeb, P.C. by Donald O. Loeb, Scottsdale, Attorneys for Defendant–Appellant Scottsdale.

## OPINION

SULT, Judge.

¶ 1 Appellant Gregory Upton appeals from the trial court's grant of summary judgment in favor of La Paz County ordering appellant to repay travel expense reimbursements he received during his tenure on the county's Board of Supervisors. For the reasons set forth below, we reverse the summary judgment in favor of the county and remand this case for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2 From 1992 through 1996, appellant was a member of the county's Board of Supervisors. During that time, he submitted numerous expense reimbursement requests, including claims for round-trip travel expenses from his home in Bouse to the site of certain special projects located elsewhere in the county, or from his home to the board offices in Parker on days when no board meetings were held. The board approved these travel expense reimbursement requests and paid him a total of $11,215.00.

¶ 3 After appellant completed his term on the board, the county filed this action against him claiming that the $11,215.00 in travel expense reimbursement had been paid without statutory authority. Appellant countered that the money had been lawfully paid or, alternatively, that the county should be estopped from recovering it. The county moved for summary judgment, which the trial court granted. The trial court thereafter denied appellant's motion for new trial and entered judgment in the county's favor. Appellant timely appealed.

## ISSUES

¶ 4 We address three issues. The first is the extent of the Board of Supervisors' statutory authority to reimburse appellant for travel expenses that appellant incurred while he was a member of the board and traveled from his home in connection with special projects that the board had appointed him to supervise. The second is whether the county is estopped from seeking recovery of these disputed reimbursements. The third is whether the county was required to name as defendants in this action the other members of the board who served with appellant and approved the reimbursements. Because this appeal is from a grant of summary judgment, our examination of these issues will be conducted *de novo,* both as to proper application of the law and as to the existence of a genuine issue of material fact. *Dole Food Co. v. North Carolina Foam Industries,* 188 Ariz. 298, 301, 935 P.2d 876, 879 (App.1996).

## ANALYSIS

### 1. Statutory Authority

¶ 5 Appellant contends he was entitled to travel expense reimbursement because he had been appointed by the board to supervise certain special projects being developed by the county. The reimbursements claimed were for travel from his home to a project site, or for travel to the board offices on non-meeting days for duties connected with these special projects. Appellant claims, and the county does not dispute, that the appointment required appellant to assume duties beyond the normal duties of a board member.

¶ 6 Appellant acknowledges that the travel at issue was not for attendance at board meetings. Consequently, appellant agrees that Arizona Revised Statutes Annotated ("A.R.S.") section 11–215(A) (1990), which provides that supervisors who live "without the limits of the county seat shall be allowed mileage from their home to the corporate limits of the county seat when attending meetings of the board," is not applicable. Appellant argues, however, that A.R.S. sections 11–603 (1990), 11–604 (1990), and 38–622 (1996) authorize the reimbursements. We begin with an examination of these statutes.

¶ 7 Section 11–603 defines the expenses of county government and provides:

> The expense of maintaining the government consists of official salaries, fees and mileage, fees and mileage of jurors and witnesses, county printing and advertising, books and stationery, feeding county prisoners, the care of the indigent sick, water, wood, lights and like supplies for county institutions and insurance and repairs of county buildings.

Section 11–604 describes the mechanism to create funds to transact county business. Subsections (A) and (B) provide for establishment of a salary fund and a sick pay fund, respectively, and subsection (C) provides:

> The board may, in like manner, create and make payments from such other county funds as necessary for the proper transaction of the business of the county.

Section 38–622(A) provides:

> When the official duties of a public officer, deputy or employee require him to travel from his designated post of duty, he shall be allowed expenses and allowances therefor.

¶ 8 The 1928 versions of these statutes, which are identical in all material respects to the current versions, were at issue in *Austin v. Barrett*, 41 Ariz. 138, 141, 16 P.2d 12, 13 (1932).[1] In that case, the supreme court held that these statutes did not authorize mileage payments to a member of the county board of supervisors for travel from his home to the county seat to attend board meetings.[2] In reaching this conclusion, the court first noted the general rule that no claim against the county is legal unless the claimant can "show some statute affirmatively authorizing it, either directly or by reasonable implication." *Id.* While the court acknowledged that the Arizona Attorney General had, since 1915, opined that such mileage payments were authorized by these statutes, the court rejected this interpretation. The primary reason was that the court feared that approving such payments could impose too heavy a financial burden on the state and its political subdivisions. The court reasoned, *inter alia*, that the predecessor to section 38–622 was not limited to county supervisors but could apply to every public officer in the state, each of whom could claim mileage merely for traveling from home to work. The court concluded that the legislature did not intend such "momentous consequences," and therefore refused to find a reasonable implication from these statutes that payment of such expenses was authorized. *Id.* at 149, 16 P.2d at 16.

¶ 9 The county places its reliance on *Austin*, arguing that because the same statutes cited and relied on by appellant were interpreted by the *Austin* court as providing no basis for any expense reimbursement, we must therefore reject appellant's claim. However, we do not agree with the county's broad characterization of *Austin's* applicability.

¶ 10 We first note that the *Austin* court was careful to limit its holding to mileage payments for a member's travel from his residence to the county seat for attendance at a board meeting. The court undertook explicitly to interpret the subject statutes so

1. *Austin* construed sections 776 and 2803 of the 1928 Revised Code of Arizona. Section 776 is the predecessor to both sections 11–603 and 11–604, and section 2803 is the predecessor to section 38–622.

2. *Austin* was decided before the enactment of the predecessor to section 11–215. In fact, the legislature responded promptly to annul the specific holding of *Austin* by amending, in 1933, section 2803 of the 1928 Arizona Code to add a provision authorizing mileage payments to board members for travel to the county seat for board meetings. *See* 1933 Ariz. Sess. Laws, ch. 40. This provision is now A.R.S. section 11–215.

as to prevent the daily ritual of a public official traveling from home to work from becoming a compensable event. Authorizing reimbursement for such "commuting" travel simply could not be "reasonably implied" from the language of the statutes.

¶ 11 *Austin* specifically observed that it was not deciding whether the statutes might by reasonable implication authorize expenses incurred by supervisors going from "place to place in the county in the performance of their official duties." *Id.* at 148–49, 16 P.2d at 16. Thus, *Austin* left open the question we face here. That is, do the subject statutes by reasonable implication authorize payment of mileage expenses to a board member when the travel is for a specific county project and the member's participation in the project is beyond the normal duties of a supervisor?

¶ 12 Thirteen years after *Austin,* our supreme court addressed statutory authorization for similar expenses in *Lee v. Coleman,* 63 Ariz. 45, 159 P.2d 603 (1945), where the court gave an expansive reading to the predecessor to section 38–622, one of the statutes considered by the *Austin* court. In *Lee,* two members of the Apache County Board of Supervisors were sued by the plaintiff taxpayer to recover, on behalf of the county, mileage and other expenses the board members had been paid for traveling about the county looking after county roads and bridges. The board members had also incurred expenses in traveling to conferences outside the county, and recovery for payment of these expenses was sought. The gist of plaintiff's claim, and the issue on which the case was decided, was whether the payments were illegal as having been paid out of the wrong county fund. The court decided the trial court had erred in its ruling on this issue and remanded for further proceedings. In light of the remand, the court determined that it must decide whether there was statutory authorization for reimbursing expenses incurred for the out-of-county travel because this issue would come up before the trial court.

¶ 13 The *Lee* court did not mention *Austin* or the predecessor to sections 11–603 or 11–604, but, as noted above, the court did refer to and construe the 1939 predecessor to section 38–622(A),[3] which read then essentially as it now reads and as it read at the time of *Austin.* The court first observed that this statute contemplated "that public officials may be required to incur travel expense in performance of their official duties." 63 Ariz. at 60, 159 P.2d at 609. The court then held that a proper interpretation of the statute was that reimbursement for the out-of-county travel was authorized. The court acknowledged that while a county officer is generally not entitled to reimbursement for expenses incurred in performance of official duties, "[i]n most jurisdictions ... it is held that a proper interpretation of the statutes authorizes the payment of necessary incidental expenses of county officials, such as ... mileage ... from the county funds" (quoting 20 C.J.S., Counties § 129, p. 941). *Id.*

¶ 14 *Lee* is instructive for two reasons. The first is the court's expansive approach to deciding what authority can be reasonably implied from the express authority granted in the statute. *Lee* readily found that the predecessor to section 38–622(A) "contemplates that public officials may be required to incur travel expense in performance of their official duties." 63 Ariz. at 60, 159 P.2d at 609. Because it was "unable to discover any prohibition against the incurring of such expenses," *id.,* the court had no difficulty implying the necessary statutory authorization for reimbursement of the challenged expenses.

¶ 15 The second is that *Lee* did not think it necessary even to address whether reimbursement for the challenged *in-county* expenditures was authorized, although such reimbursement had been made. This omission suggests that the court regarded such expenditures as too obviously reimbursable under the same statute to require any discussion. Of course, it is just such reimbursements that are at issue in this case.

¶ 16 We conclude that *Lee* provides the appropriate guidance for the result to be reached here, and in light of *Lee,* we answer

3. Ariz.Code Ann.1939 § 12–713, first sentence.

the question left open in *Austin* regarding the scope of sections 11–603 and 11–604. We hold that these statutes, together with section 38–622, substantively authorize reimbursement to a member of a county board of supervisors for travel expenses incurred by that member in performing special duties which are beyond the normal duties of a supervisor.

¶ 17 This does not end the inquiry, however, because there are two further issues that must be addressed in order to apply these statutes in the context of this case. The first issue is a mixed question of fact and law and relates to section 38–622(B), which requires that any travel substantively authorized by section 38–622(A) be procedurally authorized by travel orders. However, subsection (B) does not define "travel orders," does not state whether such an order must precede the actual travel, and does not specify whether there must be a specific order for each travel occasion.

¶ 18 What is required or sufficient in the way of a travel order is in part a legal question of statutory interpretation. However, such a question cannot be satisfactorily resolved without reference to relevant facts to provide a context for the legal conclusion. Here, we do not have an adequate record regarding what, if any, procedural authorization was sought by appellant or given by the board. Appellant claims that the board gave him some kind of blanket prior authorization when he was first appointed to these projects, but he has not cited to any portion of the record that unequivocally supports this assertion. Appellant also claims that each occasion of travel was ratified after the fact when his expenses were presented and approved by the board, but again the record contains insufficient support for this assertion.

¶ 19 These issues were never developed below because the trial court decided the case solely on the basis that *Austin* precluded any reimbursements. This was error and requires that we vacate the judgment and remand the case for further proceedings. In those proceedings, the trial court must determine the precise nature of the authorization given by the board for appellant's travel, as well as whether any acts of ratification occurred. Depending on those findings, the trial court can then decide whether the "travel orders" requirement of section 38–622(B) has been satisfied.

¶ 20 The second issue relates to the first, and arose at oral argument when the county sought to make the inquiry into "travel orders" irrelevant. Counsel for the county made the factual assertion that the entire $11,215.00 sought to be recovered from appellant was solely for mileage expense incurred by appellant to travel from his home to his office at the county seat, and did not include any travel to the sites of the projects he was appointed to supervise. The county then urged as a legal conclusion that even if this travel to appellant's office was specifically to work on the projects to which appellant was appointed, this travel could not be compensated. The county based this assertion on what it perceived as the holding in *Austin* that there is no statutory authority to reimburse for any travel from a member's home to the county seat for any purpose (excepting travel now authorized by section 11–215). Therefore, the county reasoned, even if the board had given blanket prior authorization, or ratified the travel after the fact, such authorization or ratification would be irrelevant because the board had no statutory authority to reimburse for that particular type of travel.

¶ 21 Appellant's counsel could not respond at oral argument whether the county's characterization of the travel was correct, apparently because the county had not previously made this assertion. We have not been able to ascertain the accuracy of the assertion either, but conclude that it is unnecessary to do so. Even assuming the county is correct in its factual assertion, we come to a different legal conclusion, not only because we perceive *Austin's* scope differently, but also because the county overlooks the impact of *Lee* on the question.

¶ 22 *Austin* did not negate statutorily authorized reimbursement for an official going from "place to place in the county [to perform] official duties," but simply indicated that it was not answering that question. 41 Ariz. at 148–49, 16 P.2d at 16. We read *Lee*

as affirmatively concluding that the predecessor to section 38–622(A) contemplated board members traveling within the county to care for roads and bridges. 63 Ariz. at 51, 159 P.2d at 605. Significantly, *Lee* placed no geographical restriction on where such roads and bridges may be situated, nor would it have made any sense to do so. Special projects may be located anywhere in a county, and thus a member supervising such a project might be required to travel to multiple places in the county, including the county seat. We see no reason to impose an artificial boundary around the county seat and dictate that travel by a board member who lives outside the county seat to his office at the county seat for special project duties can never be reimbursed. We therefore reject the county's argument that would preclude any reimbursement whatsoever for travel to the county seat for special project duties.

¶ 23 However, we do not hold that all travel by a board member from his home to his office, which may incidentally include performance of special duties, requires reimbursement. We are mindful of *Austin's* admonition that reimbursement extends only to those expenses that can be reasonably implied from a statute's express language. While *Lee* teaches that section 38–622(A) contemplates reimbursement for special projects travel within a county by a board member, *Austin* teaches that when such travel equates to a routine commute from home to office, it cannot be reasonably implied from section 38–622(A) that this expense is reimbursable.

■ ¶ 24 We conclude that if a board member travels from his home outside the county seat to his office at the county seat to perform various duties, only some of which are special project duties, it is not reasonable to imply from section 38–622(A) that this travel is reimbursable. This is so because such travel encompasses performance of other routine official duties and therefore would have occurred in any event, even in the absence of the special duty responsibility. In our view, such travel is so similar to the "commuting" travel considered in *Austin* that we must conclude consistently with *Austin* that section 38–622(A) does not authorize reimbursement.

¶ 25 If, on the other hand, the travel is solely to perform a special duty, different considerations become pertinent. We note that the position of county supervisor is a part-time job, which means a board member need not travel routinely to the county seat. Therefore, if a board member accepts a special duty and travels to his office solely to perform that duty, such travel cannot reasonably be classified as commuting travel because the member would not have traveled "but for" the special duty. We believe that this is the type of travel that the *Lee* court had in mind when it found that the statute "contemplates that public officials may be ***required*** to incur travel expense in performance of their official duties." 63 Ariz. at 60, 159 P.2d at 609 (emphasis added). If the performance of the special duty requires the member to travel to his office, and he would not otherwise be required to go there, *Lee* controls and section 38–622(A) does authorize reimbursement for the travel.

■ ¶ 26 We hold that when a member is appointed to perform a specific duty by the board, which is beyond the normal duties performed by board members, and that member travels from his home outside the county seat to his office at the county seat specifically to perform that duty, and such travel is solely to perform that duty and not to perform other duties, the board is authorized under sections 11–603, 11–604(C), and 38–622(A) to reimburse the member for that travel. We also hold that if the travel to perform the special duty is to some location in the county other than the county seat, the board is authorized under the same statutes to reimburse for that travel.

■ ¶ 27 As previously noted, the trial court in this case premised its grant of summary judgment on the basis that *Austin* mandated judgment for the county as a matter of law. Consequently, the factual question whether appellant's travel to the county seat qualified for reimbursement has not been addressed by the trial court, and it must be resolved at that level following remand of this case. The burden will be on appellant to prove the extent to which his

travel to the county seat is reimbursable. *See Woerth v. City of Flagstaff,* 167 Ariz. 412, 419, 808 P.2d 297, 304 (App.1990) (when proof of an assertion lies peculiarly within the knowledge of a party, the burden of producing evidence of that assertion is properly assigned to that party). Appellant may also address, and the trial court can resolve, the question of what portion of the disputed amount was paid for travel to a location other than the county seat.

**2. Estoppel**

¶ 28 Appellant contends that even if there was no statutory authorization for his travel reimbursements, the county should be estopped from belatedly seeking repayment from him years after his requests were approved and paid. To establish a claim of equitable estoppel against the government, appellant must show that (1) the county's conduct was inconsistent with a position it later adopted; (2) he actually, reasonably, and prospectively relied on the county's conduct; and (3) he sustained injury resulting from the county's repudiation of its prior conduct. *Valencia Energy Co. v. Arizona Department of Revenue,* 191 Ariz. 565, 576–77, 959 P.2d 1256, 1267–68 (1998).

¶ 29 The only argument that the county makes on this topic is that appellant did not demonstrate that he relied on the county's conduct to his injury when he obtained payment of the disputed travel expenses. With respect to the county's prior conduct, appellant set forth in his affidavit that upon his assumption of office, a fellow supervisor instructed him on the submission of mileage reimbursement forms, and indicated that because La Paz County supervisors lacked assigned automobiles, county policy allowed him to claim mileage for work-related travel. Appellant also averred that the then County Attorney informed him that the board had authority to determine its own travel policy, and that it was county policy to reimburse elected officials for mileage for county business because that policy was more cost-effective than providing officials with automobiles. Appellant's numerous reimbursement claims were all approved by the board at meetings attended by the County Attorney, who raised no objection to the legitimacy of the claims submitted. Moreover, many of appellant's mileage reimbursement claims were reviewed and approved by the County Administrator/Clerk of the Board during appellant's tenure.

¶ 30 Appellant did accept the appointment to manage the special projects, although he was not required to, and did travel in the performance of these duties. These facts are sufficient in our view to raise an inference that in accepting the appointment and traveling in performance of the special duties, appellant relied on the acts and representations of other county officials regarding reimbursement for the travel expenses. Moreover, the fact that he incurred the expenses, for which repayment is now being sought, when he could have avoided the appointment or avoided incurring the expenses, is sufficient evidence to create a question of fact regarding damage.

¶ 31 Because the trial court did not reach appellant's estoppel claim, it did not determine whether the claim met all the specific requirements set forth in *Valencia* to establish estoppel against the government in this context. On remand, it will be necessary for the trial court to examine appellant's estoppel claim to make this determination. If appellant's defense meets those criteria, the defense must be tried to a jury.

**3. Joinder**

¶ 32 The last issue is whether the county erred when it failed to name as defendants in this lawsuit the other members of the board who served with appellant. Appellant contends that A.R.S. section 11–641 (Supp.1999) required that the county do so. A resolution of this issue requires that we construe section 11–641, a legal question which we consider *de novo. Transportation Insurance Co. v. Bruining,* 186 Ariz. 224, 226, 921 P.2d 24, 26 (1996).

¶ 33 Under subsection (A) of this statute, if a board of supervisors illegally orders the payment of county funds, the board and the party to whom the payment was made, including a board member if he is the payee, are jointly and severally liable for the money,

together with interest and penalties thereon. Subsection (B) provides:

> If an illegal payment of money is made as described in subsection A, the county attorney shall institute an action in the name of the county, against the board of supervisors and others liable, to enjoin the payment of the money, or if it has been paid, to recover it with interest at the legal rate, and twenty per cent additional on the principal amount, to be paid into the county treasury to the credit of the fund from which the allowance was made.

¶ 34 The county first asserts that it need name the board only in an action to enjoin the payment of county funds, not in an action to recover money already paid. We consider this a strained reading of subsection (B) and conclude that the "or" in the statute distinguishes between the remedies available, injunction versus recovery, and not among the parties who must be named as defendants in the proceeding.

¶ 35 The county next asserts that even if the statute requires it to sue the other board members for the funds, it does not require it to sue them in the same action. However, the statute explicitly provides that the county attorney shall institute "an action" on behalf of the county against the supervisors and others liable. This plain language contemplates a single action, not a multitude of actions which would be contrary to the interests of judicial economy. *Tobel v. State, Dept. of Public Safety,* 189 Ariz. 168, 174, 939 P.2d 801, 807 (App.1997) (court gives effect to plain language of statute).

¶ 36 The county finally asserts that joinder is not required because the statute assigns joint and several liability, making joinder permissive, and Rule 19 of the Arizona Rules of Civil Procedure does not make joinder of these potential defendants mandatory. While it is true that normally all parties who are jointly and severally liable need not be joined in one action, *see* Rule 20, Arizona Rules of Civil Procedure, the county's argument overlooks the point that the very statute creating the right to recovery mandates that all potential defendants be sued in one action. The legislature clearly desired that all those culpable for the proscribed wrongdoing be held to account at the same time and in the same action. To hold that a plaintiff could circumvent this legislative intent by choosing not to include as defendants all those the statute renders liable would be to frustrate a legitimate legislative scheme for recovering public monies wrongfully expended.[4] We therefore reject this argument and direct that on remand, if the county wishes to proceed with its claim, it shall amend its complaint to name as defendants the other board members who served with appellant at the time of the disputed mileage reimbursements.[5]

## CONCLUSION

¶ 37 The trial court erred in holding there was no substantive authority for the

4. Rule 19 of the Arizona Rules of Civil Procedure could have some impact in a particular case if joinder of a particular board member was determined not to be feasible. *See* Rule 19(b). In that case, the trial court would have to make the determination under that rule whether to proceed with the action as constituted or dismiss it. However, we are not informed that there are any such considerations in this case.

5. We note that section 11–641 was amended in 1996. Apparently, the primary reason was to amend subsection (A) to eliminate the county treasurer as a defendant when a board member was illegally paid. However, subsection (B) was also amended to change "supervisors" to "board of supervisors." That is, where the statute read "the county attorney shall institute an action in the name of the county against ***the supervisors*** and others liable," the amendment required the action be against "***the board of supervisors*** and others liable."

A question arose at oral argument whether this change from "supervisors" to "board of supervisors" might evidence a legislative intent that the present board of supervisors as a separate entity should be the defendant in this action, rather than the individual former members who served with appellant. We reject this interpretation as it would result in the appropriate defendant entity always being the sitting board. Such an interpretation would be absurd. Here, for example, the present board played no role in the alleged illegal payment of money yet under the suggested interpretation, it would become responsible for reimbursement of such money. We conclude instead that the amendment to subsection (B) was merely cosmetic in nature and does not change the necessity of joining as defendants those supervisors who actually participated in the alleged illegal payment, whether they are currently serving or are no longer on the board.

payment of appellant's expense claims. On remand, the trial court must resolve the fact issues identified in this decision and thereafter decide the legal questions arising from the factual findings. Further, the county must join as defendants the other board members who approved the payments to appellant. We reverse the summary judgment in favor of the county and remand this matter for further proceedings consistent with this opinion.

CONCURRING: CECIL B. PATTERSON, JR., Presiding Judge, and NOEL FIDEL, Judge.