6 P.3d 339

**STATE of Arizona, Plaintiff–Appellee,**

v.

**AFFORDABLE BAIL BONDS, Surety–Appellant.**

**No. 1 CA–CV 00–0030.**

Court of Appeals of Arizona, Division 1, Department E.

June 27, 2000.

James T. Hickey, Phoenix, for Affordable Bail Bonds

Richard M. Romley, Maricopa County Attorney By Eddie L. Morgan, Phoenix, for State of Arizona

## OPINION

TIMMER, Judge.

¶ 1 Surety–appellant Affordable Bail Bonds ("Affordable") appeals from a judgment entered in the trial court forfeiting one-half of an appearance bond posted by Affordable. We are asked to decide two issues:

1. Whether our legislature, by enacting Arizona Revised Statutes Annotated ("A.R.S.") section 13–3885(B)(1) (Supp.1999), created a duty owed by law enforcement agencies to bail bondsmen to apprehend a felony fugitive found within a residential structure; and

2. Whether Affordable surrendered its principal to the State, within the meaning of A.R.S. section 13–3974 (Supp.1999), by notifying the police of the principal's location.

## Factual and Procedural History

¶ 2 After being charged with various drug and weapons-related offenses, Kristen Sheahart made her initial appearance in Maricopa County Superior Court on June 3, 1999. The court set her appearance bond at $3,500, which was posted by Affordable on July 13, 1999. Sheahart was accordingly released from custody.

¶ 3 Despite proper notification, Sheahart failed to appear in court on August 19, 1999 for an initial pretrial conference. The trial court therefore issued a bench warrant for Sheahart's arrest and set a bond forfeiture hearing for October 1, 1999, which was later continued to October 29, 1999.

¶ 4 At the October 29, 1999 bond forfeiture hearing, Affordable argued the bond should be exonerated because law enforcement officials did not respond to a report that Affordable's agents had located Sheahart inside a hotel room. Alternatively, Affordable sought a continuance of the hearing to allow it to locate and surrender Sheahart to the State.

The State acquiesced to the continuance and the hearing was reset for December 3, 1999.

¶ 5 On November 4, 1999, Affordable learned Sheahart was present inside a residence located in Phoenix. Affordable again contacted the Phoenix Police and requested its assistance in apprehending Sheahart. The police failed to immediately respond and Sheahart escaped capture.

¶ 6 Sheahart was arrested by the Phoenix Police Department on November 25, 1999, after she was discovered in a stolen car. At the time of her arrest, the police did not know her true identity or that there was an outstanding warrant for her arrest. One of Affordable's agents eventually contacted the police and assisted them in identifying Sheahart.

¶ 7 At the December 3, 1999 bond forfeiture hearing, Affordable renewed its request for exoneration of the bond because the Phoenix Police had refused to assist Affordable in apprehending Sheahart at the hotel and had failed to timely respond to a request to apprehend Sheahart at the residence. The State sought complete forfeiture of the bond because Affordable did not surrender Sheahart to the State. Rather, she was arrested by the Phoenix Police after an independent investigation determined she was in possession of a stolen vehicle. The trial court ruled Affordable deserved exoneration of one-half of the bond because it had assisted the police in identifying Sheahart after her arrest.

¶ 8 Affordable timely filed its notice of appeal and we have jurisdiction to consider it pursuant to A.R.S. section 12–2101(B) (1994).

## Standard of Review

■■ ¶ 9 We consider *de novo* the construction of the statutory scheme governing bail bonds. *See La Paz County v. Upton*, 195 Ariz. 219, 226, ¶ 32, 986 P.2d 252, 259 (App.1999). We review the trial court's order partially exonerating the bond for an abuse of discretion. *See United Bonding Ins. Co. v. City Court of Tucson*, 6 Ariz.App. 462, 464, 433 P.2d 642, 644 (1967).

## Discussion

■ **A. Section 13–3885(B)(1), A.R.S., does not create a duty owed by law enforcement agencies to bail bondsmen to respond to a request to apprehend a fugitive who has been located within a residence.**

¶ 10 Bail bondsmen have long operated within our system of justice. During the nineteenth century, the United States Supreme Court described the bondsman's role as follows:

When bail is given, the principal is regarded as delivered to the custody of his sureties. Their dominion is a continuance of the original imprisonment. Whenever they choose to do so, they may seize him and deliver him up in their discharge; and if that cannot be done at once, they may imprison him until it can be done. They may exercise their rights in person or by agent. They may pursue him into another state; may arrest him on the Sabbath; and, if necessary, may break and enter his house for that purpose.

*Taylor v. Taintor,* 83 U.S. (16 Wall.) 366, 21 L.Ed. 287 (1872). Arizona has similarly recognized a bail bondsman's right to seize a defendant and deliver him to the State. *See* A.R.S. § 13–3885(A) (Supp.1999) ("For the purpose of surrendering the defendant, a surety on the bail bond of a defendant may arrest him before the forfeiture of the undertaking . . .").

¶ 11 In response to a highly publicized killing of two individuals in their home by purported "bounty hunters," the legislature in 1998 amended A.R.S. section 13–3885 to narrow the authority of bail bondsmen to arrest defendants. *See* Ann L. Merry, *S.B. 1257: Arizona Regulates Bounty Hunters,* 31 ARIZ. ST. L.J. 229, 230–32 (1999). This statute now provides, in significant part,

B. A bail recovery agent or a bail bond agent shall not do any of the following:

1. Enter an occupied residential structure without the consent of the occupants who are present at the time of the entry.

A.R.S. § 13–3885(B)(1).

¶ 12 Affordable argues that by adopting A.R.S. section 13–3885(B)(1), the legislature placed an affirmative duty upon law enforcement agencies to apprehend a felony fugitive who has been located inside a residential structure by a bail bondsman. According to Affordable, the legislative history of section 13–3885 supports this interpretation and a contrary one would lead to an absurd result as a fugitive would be able to evade justice by hiding within a residence.

■ ¶ 13 The primary principle of statutory construction is to determine and give effect to the legislature's intent. *See Callender v. Transpacific Hotel Corp.,* 179 Ariz. 557, 560, 880 P.2d 1103, 1106 (App.1993). "To determine this intent, we first review a statute's language." *Calmat of Arizona v. State ex rel. Miller,* 176 Ariz. 190, 193, 859 P.2d 1323, 1326 (1993). We also consider the statute's historical background and its effects and consequences. *See State v. Cornish,* 192 Ariz. 533, 537, ¶ 16, 968 P.2d 606, 610 (App. 1998). We will refrain from construing a statute to require something not within the plain intent of the legislature as expressed by the language of the statute. *See City of Phoenix v. Donofrio,* 99 Ariz. 130, 133, 407 P.2d 91, 93 (1965). However, "[s]tatutes must be given a sensible construction that accomplishes the legislative intent and which avoids absurd results." *Arizona Health Care Cost Containment Sys. v. Bentley,* 187 Ariz. 229, 233, 928 P.2d 653, 657 (App.1996).

■ ¶ 14 The plain language of A.R.S. section 13–3885(B)(1) does not evidence an intent to require law enforcement agencies to respond to a call from a bail bondsman who has located a fugitive inside a residential structure. "Where language is unambiguous, it is normally conclusive, absent a clear expressed legislative intent to the contrary." *Mail Boxes Etc., USA v. Industrial Comm'n,* 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). Therefore, unless the legislative history of section 13–3885 clearly expresses an intent to create an affirmative duty owed by law enforcement to bail bondsmen to respond to a request to arrest a defendant located within a residence, or an absurd result would occur if a contrary interpretation were adopted, such a duty does not exist. *See id.; see also*

*Arizona Health Care Cost Containment Sys.*, 187 Ariz. at 233, 928 P.2d at 657.

¶ 15 Affordable argues that statements by Senator Kaites, sponsor of the legislation ultimately adopted as section 13–3885, evidence an intent to create a duty owed by law enforcement agencies to bail bondsmen to respond to requests to apprehend fugitives found with in residential structures. However, Senator Kaites only described an existing practice of bail bondsmen to apprehend fugitives by awaiting their exit from residences or by calling the police to make an arrest. These statements merely recount the manner in which bail bondsmen traditionally proceed in order to assure safe apprehension of fugitives and do not "clearly express" an intent to create the duty urged by Affordable. The sole intention clearly expressed by the legislature was to protect the public by preventing bail bondsmen from invading residential structures to capture fugitives. Imposing a duty upon law enforcement to assist a bail bondsman in capturing a defendant to prevent a bond forfeiture is not so necessary to achieve this purpose that it must be read into a statute that is silent on the issue.

¶ 16 Moreover, an interpretation of section 13–3885 that does not include the creation of an affirmative duty of law enforcement to assist bail bondsmen in apprehending fugitives does not lead to an absurd result. Affordable argues fugitives will be able to evade capture by hiding in homes unless law enforcement is compelled to assist in apprehension. However, bail bondsmen, or their agents, are not prevented from "staking out" fugitives and apprehending them as they leave a residence.[1] Also, even though no special duty is owed to bail bondsmen, law enforcement can be called upon to arrest a fugitive on an outstanding warrant in the normal course of carrying out its duties. *See* Eugene McQuillin, THE LAW OF MUNICI-PAL CORPORATIONS § 45.15, at 123 (3d ed.1992) (one of the fundamental duties of the police department is to arrest perpetrators). Indeed, Affordable acknowledges that contacting the police is the typical procedure successfully employed by bail bondsmen to capture fugitives located within a residence. Therefore, the record does not support Affordable's dire prediction of events should we refuse to interpret A.R.S. section 13–3885 in the manner urged by Affordable.

■ ¶ 17 Finally, unlike bail bondsmen, law enforcement cannot arrest a defendant released on bail unless the defendant violates the terms of his release and an arrest warrant is issued. *See Fitzpatrick v. Williams*, 46 F.2d 40, 40–41 (5th Cir.1931)("The right of the surety to recapture his principal is not a matter of criminal procedure, but arises from the private undertaking implied in the furnishing of the bond. . . . The bail [bondsman] can surrender his principal before the bond is forfeited, and arrest him for that purpose without process. The state cannot."). Because section 13–3885 governs capture of defendants even if an arrest warrant has not been issued by the court, Affordable's interpretation of this statute necessarily requires law enforcement in some circumstances to apprehend a defendant without process of law. As the State cannot act in excess of its powers, we reject Affordable's argument for this additional reason. *See* Ariz. Const. art. II, § 8 ("[n]o person shall be disturbed in his private affairs, or his home invaded, without authority of law").

¶ 18 Because neither the plain language of section 13–3885 nor its legislative history expresses an intent to create a duty owed by law enforcement agencies to bail bondsmen to respond to requests to apprehend fugitives found with in residential structures, we hold such a duty is not imposed by this statute.[2]

---

1. Indeed, the record reveals Affordable "staked out" Sheahart and had several opportunities to capture her outside a residential structure, but Affordable elected not to do so. That such opportunities existed, however, undercuts Affordable's argument that fugitives will escape capture by hiding within homes unless we interpret section 13–3885 as imposing an affirmative duty on law enforcement to respond to requests by bail bondsmen to apprehend fugitives found within residential structures.

2. Affordable also argues that by enacting section 13–3885 the legislature created an implied duty for law enforcement to refrain from impairing or interfering with a bail bondsman's contractual right to apprehend the defendant. According to Affordable, this duty imposes on law enforcement "an implied affirmative duty to apprehend" the

**B. Section 13–3974, A.R.S., does not permit a bail bondsman to "constructively" surrender a defendant by notifying the police that a fugitive is located within a residential structure.**

¶ 19 Section 13–3974, A.R.S., provides "[a] surety may be relieved from liability on an appearance bond if the surety surrenders the defendant into the custody of the sheriff of the county in which the prosecution is pending and the sheriff reports the surrender to the court." Affordable argues that because the police failed to respond to Affordable's request to apprehend Sheahart at the hotel,[3] and later at the residence, Affordable "constructively surrendered" Sheahart to the State within the meaning of A.R.S. section 13–3974, and exoneration of the bond was therefore mandatory.

¶ 20 The word "surrender" is not defined in A.R.S. section 13–3974. Accordingly, we must construe the statute according to the "common and approved use of the language." *See* A.R.S. § 1–213 (1995); see also *Wells Fargo Credit Corp. v. Tolliver*, 183 Ariz. 343, 345, 903 P.2d 1101, 1103 (App.1995) (statutory language is the best indicator of legislative intent and we will give terms "their ordinary meanings").

¶ 21 Webster's defines "surrender," in significant part, as "the action of yielding one's person or giving up the possession of something especially into the power of another." *See* Webster's Ninth Collegiate Dictionary 1188 (1989). Black's Law Dictionary defines "surrender by bail" as "[t]he act, by bail or sureties in a recognizance, of giving up their principal again into custody, in their own discharge." Black's Law Dictionary 1444 (6th ed.1991). Under either definition, "surrender" occurs when *possession* of an individual or thing passes into the custody of

another. Thus, we hold that "surrender," as used in A.R.S. section 13–3974, means the transfer of physical possession of a defendant into the custody of the State and does not occur if a bail bondsman merely notifies law enforcement of the location of a defendant within a residential structure. *See, e.g., State ex rel. Corbin v. Superior Court*, 2 Ariz.App. 257, 262, 407 P.2d 938, 943 (1965)("surrender" under a statutory scheme preceding section 13–3974 must be an *actual* surrender and not a mere offer of surrender); *People v. Amwest Surety Ins. Co.*, 229 Cal.App.3d 351, 355–56, 280 Cal.Rptr. 58, 61–62 (1991)(a surety's attempted transfer of custody cannot be considered a "surrender" if the surety has not first arrested the defendant). Because Affordable never transferred actual possession of Sheahart to the State, the trial court did not abuse its discretion by failing to completely exonerate the bond under A.R.S. section 13–3974.[4]

¶ 22 Affordable finally argues that because it has been the "common practice" for law enforcement to respond to requests from bail bondsmen to apprehend defendants, the State is contractually obligated to respond in this manner. *See AROK Constr. Co. v. Indian Constr. Serv.*, 174 Ariz. 291, 299, 848 P.2d 870, 878 (App.1993)(a course of dealing between parties may become part of an agreement). However, because Affordable did not urge this argument to the trial court we will not consider it. *See Napier v. Bertram*, 191 Ariz. 238, 239, ¶ 6, 954 P.2d 1389, 1390 (1998).

### Conclusion

¶ 23 A bail bondsman assumes the risk its principal will fail to appear when ordered by a court, potentially resulting in a

---

defendant once he has been located within a residence by a bail bondsman. This argument essentially repeats the first argument urged by Affordable and we therefore reject it for the reasons previously set forth in this opinion.

**3.** Section 13–3885(G)(3), A.R.S., defines "occupied residential structure" as "an edifice of a type that is generally used to house human beings." This definition encompasses hotel rooms. *See State v. Hussain*, 189 Ariz. 336, 338, 942 P.2d 1168, 1170 (App.1997)(hotel room qualifies as a

residential structure under Arizona's similarly broad burglary statute); *see also State v. Decker*, 119 Ariz. 195, 197, 580 P.2d 333, 335 (1978)(hotel room is as much the object of Fourth Amendment protection as a home or office). Thus, Affordable was prohibited by A.R.S. section 13–3885 from entering the hotel room to seize Sheahart.

**4.** Whether the trial court erred by exonerating one-half of the bond is not at issue in this appeal.

forfeiture of the bond. *See United Bonding Ins. Co. v. City Court of Tucson,* 6 Ariz.App. at 464, 433 P.2d at 644. The passage of A.R.S. section 13–3885 undoubtedly elevated this risk as apprehension of defendants is now more difficult for bail bondsmen. However, because such apprehension is not impossible, bail bondsmen must conduct business within the framework set forth in A.R.S. sections 13–3885 and 13–3974. *See Taylor,* 83 U.S. at 369 ("the bail will be exonerated where the performance of the condition is rendered impossible by the act of God, the act of the obligee, or the act of law"). Because Affordable failed to deliver actual possession of Sheahart to the State, the trial court did not abuse its discretion by refusing to fully exonerate the bond.

¶ 24 Accordingly, we affirm the judgment of the trial court.

CONCURRING: REBECCA WHITE BERCH, Presiding Judge, and RUDOLPH J. GERBER, Judge.